IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2004

## STATE OF TENNESSEE v. COREY LAMONT RADLEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-B-1114     Steve Dozier, Judge**

—————————

**No. M2003-01466-CCA-R3-CD - Filed April 14, 2004**

—————————

A jury convicted the Defendant, Corey Lamont Radley, of second degree murder. The trial court subsequently sentenced him as a Range I offender to twenty-five years of incarceration. In this direct appeal, the Defendant challenges the sufficiency of the evidence; contests the admission of certain evidence; and complains that his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ, joined.

Emma Rae Tennent (on appeal); J. Michael Engle (at trial); and William J. Steed, Nashville, Tennessee, for the appellant, Corey Lamont Radley.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Jeremy Lamont Mallard testified that he had been friends with the victim, Jesse Belser, since the early 1990s. He knew that the victim dealt in kilos of cocaine, and admitted that he dealt in kilos of cocaine as well. Indeed, the two men occasionally transacted cocaine deals with one another. Mr. Mallard acknowledged that, at the time of his testimony, he was serving a 292-month sentence in federal prison for participating in a conspiracy to distribute cocaine.

At about 1:30 in the afternoon on Friday, February 21, 1997, Mr. Mallard was driving to TSU. At an intersection near campus, he saw the victim standing by himself. Mr. Mallard parked his car and joined the victim. The victim was planning on meeting someone at that location. They conversed for about ten minutes, during which time the victim retrieved two kilos of cocaine from his car to give Mr. Mallard. Mr. Mallard was going to "move" these drugs for the victim, but his

customer called and cancelled the buy. Accordingly, Mr. Mallard gave the cocaine back to the victim, who returned it to the car.

As the men were talking, the Defendant, who Mr. Mallard knew as "Rabbit," and someone else pulled up in a green, four-door car. The Defendant was sitting in the passenger seat. Mr. Mallard told the victim that he was going to go; the victim said "okay" and walked over to his car. There, according to Mr. Mallard, the victim retrieved a bag from the same location from which he had earlier gotten the cocaine for Mr. Mallard. The Defendant got out of his car, and the victim gave the bag to him. The Defendant put the bag in the backseat of his car and shut the door.

By this time, Mr. Mallard had returned to his car and was adjusting his CD player. He saw the driver of the Defendant's car get out and look around "like he was looking for the police or something." The Defendant and the victim were conversing next to the Defendant's car. Mr. Mallard pulled out of his parking place and began to drive by the Defendant's car. As he drove by, he saw the victim turn toward him. The Defendant was behind the victim, and Mr. Mallard saw him shoot the victim in the back of the head. Mr. Mallard testified that the victim fell, "and [the Defendant] shot 'im, like, three or four more other times." Mr. Mallard left the scene at once.

On cross-examination, Mr. Mallard admitted that he was to receive a fifty-percent reduction in his federal prison sentence for his truthful testimony in this case.

The police were called at approximately three o'clock. When they arrived at the scene, they determined that the victim was dead. Crime scene investigators found approximately $9,000 in cash in the victim's clothes and a bag containing a box of washing detergent near the victim's body. No shell casings were found. A search of the Defendant's apartment produced no evidence. An autopsy was performed on the victim, revealing that the victim had been shot twice in the head, causing his death. One of the bullets was recovered, but no matching weapon was found. Mr. Mallard went to the police station voluntarily on the night of the shooting and gave a statement to Detective Kent McAllister in which he identified the Defendant as the shooter. He also selected the Defendant's photograph from a photographic line-up containing six photographs. On this basis, the police arrested the Defendant.

Mr. Mallard admitted that he had not appeared at the Defendant's preliminary hearing, although it was repeatedly continued. Mr. Mallard testified that he did not appear because his wife had been shot, and he chose to disappear from Nashville. Eventually Det. McAllister learned that Mr. Mallard was in federal custody. In March 2001, Det. McAllister interviewed Mr. Mallard again about the shooting. Mr. Mallard again identified the Defendant as the shooter. Det. McAllister testified that the Defendant was indicted in June 2001, and that Mr. Mallard's grandmother was shot in her home shortly thereafter. Det. McAllister acknowledged that Mr. Mallard did not tell him anything about the cancelled drug deal between himself and the victim until the March 2001 interview.

Jack Day Reese testified on behalf of the Defendant. He stated that he worked for Colonial Construction Company and that the Defendant worked with him. He testified that he remembered

the day of the shooting because that was the day the Defendant was arrested. Mr. Reese testified that the Defendant had been with him that afternoon and that they worked until about 3:30 or 3:45 when they returned to the office. The Defendant's paychecks for the weeks of January 31, February 7, February 14, and February 21, 1997, were also introduced. Each check was in the amount of $500.

## SUFFICIENCY OF THE EVIDENCE

Initially, the Defendant contends that the evidence is not sufficient to support his conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Second degree murder is defined as the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b). Mr. Mallard's testimony and the autopsy results were certainly sufficient to establish that someone knowingly killed the victim. The Defendant's objection is to the weight of the evidence establishing his identity as the perpetrator. The Defendant contends that Mr. Mallard's testimony was "substantially impeached," that there was no corroborative proof, and that Mr. Jack Reese's testimony established his alibi.

In essence, the Defendant is asking this Court to second-guess the jury's assessment of the witnesses' credibility. This, we cannot do. Giving the State's evidence the presumptions to which

it is entitled in this appeal, we conclude that the evidence is more than sufficient to support the jury's verdict. This issue is without merit.

## PROOF OF ATTACKS ON MALLARD'S FAMILY

During the direct examination of Mr. Mallard, the prosecutor inquired as to why Mr. Mallard had not appeared at the Defendant's preliminary hearing. Mr. Mallard declared, "My wife was shot." Subsequently, during Det. McAllister's testimony, the prosecutor inquired, "are you personally familiar with a situation involving Mr. Mallard's grandmother, that took place shortly after [the defendant was indicted]?" Det. McAllister responded that he was, and that the situation involved Mr. Mallard's grandmother being shot in her own home.

The Defendant contends that both of these statements constituted inadmissible hearsay. We disagree. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). For example, Mr. Witness testifies that Mr. John Q. Public told him that Mr. Bad Guy shot Mr. Good Guy. Neither of the statements at issue here meets this definition: Mr. Mallard testified that his wife was shot, not that someone told him that his wife was shot. Moreover, Det. McAllister testified that he had personal knowledge of Mr. Mallard's grandmother being shot, not that he had been told by someone else that she had been shot. The Defendant misperceives the nature of hearsay. This contention is without merit.

The Defendant also contends that these statements should have been excluded as not relevant. Initially, we note that the only objection raised by the Defendant to Mr. Mallard's testimony about his wife was based on the rule against hearsay. As we concluded above, that objection was without merit. The Defendant did not raise an objection to this testimony based on relevance. Accordingly, the Defendant may not now raise that ground for objection on appeal. See Tenn. R. App. P. 36(a); see also State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) ("It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal.")

The Defendant did object to Det. McAllister's testimony about Mr. Mallard's grandmother on the basis of relevance. The trial court overruled the objection on the basis that it "has to do with Mallard and issues that the Jury has heard about." This Court reviews a trial court's evidentiary rulings under an abuse of discretion standard. See State v. James, 81 S.W.3d 751, 760 (Tenn. 2002).

Our rules of evidence provide that "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. To be relevant, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The State elicited Det. McAllister's testimony in conjunction with establishing Mr. Mallard's failure to appear at the Defendant's preliminary hearing and the State's difficulty in obtaining Mr. Mallard's cooperation thereafter. Mr. Mallard had testified that, after he failed to appear at the Defendant's preliminary hearing, he was picked up on

a material witness subpoena. Because of that, he was required to serve another six months on a previous sentence. While he was serving that time, in 1998, a Detective Mann from the police department spoke with him about the instant case. Mr. Mallard testified that, at that point in time, he was not willing to testify against the Defendant. It was not until Mr. Mallard was taken into federal custody some years later that he became cooperative. At this time, in March 2001, Det. McAllister interviewed Mr. Mallard at the federal courthouse. Mr. Mallard again identified the Defendant as the shooter. The following month, Mr. Mallard called Det. McAllister with concerns over the safety of his family, and seeking additional concessions on his federal sentence. The point of Det. McAllister's contested testimony was that Mr. Mallard called him after Mr. Mallard's grandmother had been shot. During this phone call, Mr. Mallard again identified the Defendant as the shooter.

We agree with the trial court that this evidence was relevant. The fact at issue was Mr. Mallard's credibility. During the cross-examination of Mr. Mallard, defense counsel went to great lengths to point out the details of Mr. Mallard's deal with the federal authorities, and further pointed out at least one instance in which Mr. Mallard had been less than truthful with Det. McAllister. Defense counsel also sought to prove that Mr. Mallard demanded additional benefits after the Defendant was indicted. As acknowledged by the Defendant, the State was adducing this proof in an effort to explain Mr. Mallard's previous reluctance to testify against the Defendant. For that reason, the proof was relevant. Accordingly, this contention is without merit.

Finally, the Defendant contends that, even if relevant, this proof should have been excluded on the grounds that its probative value was substantially outweighed by the danger of unfair prejudice to the Defendant. See Tenn. R. Evid. 403. The Defendant did not raise this objection at trial, and this contention is therefore waived. See Tenn. R. App. P. 36(a); Alder, supra. Because we find this to be a much closer question, however, we will address the merits of this issue.

The clear implication of this proof was that the Defendant was in some way connected to the shooting. The danger raised by this implication is that the jury convicted the Defendant based on not just the testimony of his involvement with the victim's death, but also based on an assumption that the Defendant was involved in another shooting. That is, the jury may have based its verdict on a conclusion that the Defendant has a propensity to commit violent crimes. Our rules of evidence generally exclude propensity evidence. See Tenn. R. Evid. 404(b) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait.") As recognized by our supreme court,

> The general rule excluding evidence of other crimes is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. Such a potential particularly exists when the conduct or acts are similar to the crimes on trial.

State v. Rickman, 876 S.W.2d 824, 828 (Tenn. 1994) (citation omitted).

Our rules of evidence also provide that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403. In this case, the proof of the attack upon Mr. Mallard's grandmother was not crucial evidence. The attack prompted Mr. Mallard to call Det. McAllister in April and discuss concerns about his family's safety, and to tell the detective that he was considering revoking his cooperation. Apparently, the State was trying to reassure the jury that Mr. Mallard didn't "hold out" on testifying simply as a tactic in his plea bargaining with the United States district attorney, but rather because he was afraid to testify. While this proof may have bolstered Mr. Mallard's credibility somewhat, we recognize that it may have had a much more significant impact as an illustration of the Defendant's violent character. As such, it was unfairly prejudicial. Moreover, given that the relevance of this contested proof was slight, we conclude that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court erred in ruling this evidence admissible.

Nevertheless, we find the trial court's error in this regard to be harmless. The jury was given a basic choice in this case: to believe Mr. Mallard or to believe Mr. Reese. The jury determined that Mr. Mallard's credibility was greater than that of Mr. Reese. This was the jury's prerogative. We are convinced that the jury would have arrived at this same conclusion even had it not heard about Mr. Mallard's grandmother. Mr. Mallard's testimony about his presence at the scene of the shooting was clear and concise. He was previously acquainted with the Defendant and therefore was in a position to positively identify him. The crime took place during daylight. His multiple statements to the police were consistent in the identification of the shooter. He acknowledged his own involvement in the cocaine business in a forthright manner. In short, we are unpersuaded that the Defendant was prejudiced by the trial court's error, and the Defendant is therefore entitled to no relief on this issue.

## SENTENCING

The Defendant was convicted of second degree murder, a Class A felony. See Tenn. Code Ann. § 39-13-210(b). The corresponding range of punishment was fifteen to twenty-five years. See id. § 40-35-112(a)(1). After a sentencing hearing, at which no additional proof other than the presentence report was introduced, the trial court sentenced the Defendant as a Range I offender to the maximum sentence of twenty-five years. In doing so, the trial court relied on the following four enhancement factors:

1. The Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

2. The Defendant employed a firearm during the commission of the offense;

3. The felony resulted in death to another person and the Defendant has previously been convicted of a felony that resulted in death or bodily injury; and

4.    The felony was committed while the Defendant was on bail and the Defendant was ultimately convicted of the felony for which he was on bail.

See Tenn. Code Ann. § 40-35-114(2), (10), (12), (14(A)).  The trial court applied no mitigating factors.  The Defendant contends on appeal that the trial court erred in applying the first two of these enhancement factors.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing.  See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).  To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct.  See Tenn. Code Ann. § 40-35-401(d).  However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result.  See State v. Pike, 978 S.W.2d 904 app. at 926-27 (Tenn. 1998).  We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record.  See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).  The burden of showing that a sentence is improper is upon the appealing party.  See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The presumptive sentence for a Class A felony is the midpoint within the applicable range.  See Tenn. Code Ann. § 40-35-210(c).  The presumptive sentence in this case is therefore twenty years.  A trial court is to increase the presumptive sentence as appropriate for applicable enhancement factors, and decrease it as appropriate for applicable mitigating factors.  See id. § 40-35-210(e).  As set forth above, the trial court in this case applied four enhancement factors and no mitigating factors.

The Defendant's basis for objecting to the trial court's use of the enhancement factor for previous convictions is that most of the offenses listed in the presentence report have no disposition designated, and for those which do have a disposition designated, no certified copies of the convictions were introduced. The Defendant cites us to no authority for the proposition that, to justify the application of the enhancement factor for previous criminal history, the accused's prior convictions must be proven by certified copies. For this reason, the Defendant's argument is waived. See Tenn. Ct. Crim. App. R. 10(b). Moreover, it is without merit. At the sentencing hearing, the presentence report was entered by the State without objection by the Defendant. Defense counsel objected only to those offenses listed in the report for which no disposition was designated. There are, however, three offenses for which a disposition is designated, and one of those offenses is a first degree murder. Application the enhancement factor for a previous criminal history was therefore appropriate. See State v. Robert Lee Fox, No. E2002-01585-CCA-R3-CD, 2003 WL 21339252, at *3 (Tenn. Crim. App., Knoxville, June 10, 2003) (where presentence report was entered into evidence without objection, trial court was entitled to rely on convictions set forth therein and did not need certified copies of the convictions in order to apply enhancement factor for previous criminal history).

Next, the Defendant contends that the trial court should not have applied the enhancement factor for use of a deadly weapon "[s]ince it is virtually impossible to conceive that any murder could be committed without the use of a deadly weapon." We respectfully disagree. This Court has previously held that the use of a deadly weapon is not an element of the offense of murder and may therefore be used to enhance the defendant's sentence. See State v. Baxter, 938 S.W.2d 697, 705-06 (Tenn. Crim. App. 1996); State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994). This issue is without merit.

## CONCLUSION

The Defendant having failed to establish that the trial court committed reversible error, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE