IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 20, 2001 Session

## STATE OF TENNESSEE v. JAMES DAVID ALDER

**Appeal from the Circuit Court for Franklin County**
**No. 12715     Buddy D. Perry, Judge**

---

**No. M2000-01825-CCA-R3-CD - Filed September 7, 2001**

---

The Defendant, James David Alder, was convicted of attempted second degree murder, aggravated assault and reckless endangerment. He was sentenced as a Range III Persistent Offender to twenty (20) years for the attempted second degree murder, eleven (11) months and twenty-nine (29) days for assault, and three (3) years for reckless endangerment. His sentences were ordered to run concurrently to each other, but consecutively to the sentence ordered in a case for which the Defendant was on bail at the time he committed the present offenses. On appeal, he argues: (1) the trial court erred in allowing the jury to hear expert testimony concerning the extent of the victim's injuries, the length of her hospital stay and the number of surgeries she had; (2) the evidence was insufficient to sustain a conviction for reckless endangerment; and (3) the trial court failed to follow the sentencing guidelines and improperly ordered consecutive sentencing. After a review of the law and the briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES, J. and TERRY LAFFERTY, Sp.J., joined.

Martha J. Yoakum, District Public Defender; and B. Jeffery Harmon, Assistant Public Defender, for the appellant, James David Alder.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; J. Michael Taylor, District Attorney General; Steven Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On the morning of August 28, 1998, the Defendant entered the Favorite Market in Dunlap, Tennessee with a 20-gauge shotgun and shot his wife, Casey Davidson (then Casey Alder), in the stomach and chest area. Davidson stated that she had arrived for work at about 5:00 a.m., and had

been there approximately ten minutes when the Defendant entered the store and walked towards the kitchen area. Davidson was in the kitchen with Nancy Early, another Favorite employee. She testified that the Defendant looked at her and said "Bitch, today is your day." Davidson said that she told the Defendant to "do what he felt like he had to do." She stated that they began to argue, and the Defendant kept insisting that she leave with him, but she refused. Davidson testified that she told the Defendant that their relationship was over and that she was not going to leave with him. She asked her co-worker, Lynnette Farley to call the police, but the Defendant "pulled the hammer back on the gun and he turned the gun on Lynnette, and he told her if she didn't put the phone down he would kill her." Davidson said that she yelled at the Defendant and reminded him that the argument was between them, and not Mrs. Farley.

At that point, the Defendant turned the gun on Davidson and said, "Casey, I love you. . . I want to be with you. . . But you don't love me any more. . . If I can't have you, nobody will." The Defendant pulled the trigger and shot his wife at "point blank range" in the stomach and chest. Nancy Early stated that Davidson was standing near her, when the Defendant shot Davidson. Next, the Defendant "broke down the gun," "popped the shell out," put another shell in the gun, raised the gun, pointed it at his wife and pulled the trigger, but the gun snapped. The Defendant left the store and Lynnette Farley called the police.

The victim was life flighted to Erlanger Hospital in Chattanooga, Tennessee, where she underwent extensive surgery and was in a coma for two months. Dr. Richart, a trauma surgeon at Erlanger Hospital, testified that he was the surgeon on call when Casey Davidson was brought to the hospital. He stated that the victim "sustained a close range blast injury to her left upper quadrant area and left chest area. Dr. Richart testified that a "significant amount" of Ms. Davidson's left breast had been blown away. He stated that she suffered injury to the left lobe of her liver, a disrupted spleen, her left colon was blown in half (which caused stool to spread throughout her abdomen), her small bowel was severely damaged, and the tail of her pancreas was injured. Dr. Richart also stated that he found "several metal fragments . . . a yellow plastic appearing cup and some . . . cardboard material" inside Ms. Davidson.

Dr. Richart testified in great detail, as to the initial operations that were performed on Ms. Davidson's abdomen to control bleeding and stool contamination, as well as to repair her left breast, colon and small bowel. Dr. Richart also described how Ms. Davidson's bowels were left exposed, due to excessive swelling in her abdomen, which prevented him from "sewing her closed." Dr. Richart testified that Ms. Davidson remained in the intensive care unit for quite some time and endured several operations due to multiple bouts of infection. After dismissing Ms. Davidson from the hospital, Dr. Richart continued to see her concerning recurring infections, which were finally alleviated. Dr. Richart testified that he was currently performing reconstructive surgery on Ms. Davidson, in an effort to reconstruct her small bowel, colon and abdomen. He stated that Ms. Davidson "still has quite a bit ahead of her." On cross-examination, Dr. Richart testified that it was his opinion that Ms. Davidson had been shot with a slug, which normally fragments.

## ANALYSIS

### I. Admission of Medical Testimony

In his first issue, Defendant contends that the trial court erred in denying his motion to limit the medical testimony relating to the victim's injuries. He claims that much of Dr. Richart's testimony was not relevant to prove the charged offense and was highly prejudicial.

First, we note that the record does not contain a written motion in limine from the Defendant. Second, the record shows that prior to the start of trial, the Defendant brought before the trial court an oral motion in limine. The motion raised several issues, including the admissibility of Dr. Richart's medical testimony concerning the extent of the victim's injuries, the number of surgeries performed on the victim, and the length of the victim's hospital stay. The Defendant's motion regarding the doctor's testimony was brief and broad. The extent of the motion is as follows:

> Mr. Harmon [Defense Counsel]: Also, Your Honor, the State has apparently a doctor under subpoena that was a trauma surgeon at Erlanger Hospital. We would be objecting to the doctor testifying, because of the relevance of it, how badly show was injured and how long she was hospitalized and how many surgeries it took and the length of her hospital stay. We feel like that's not relevant as to whether or not he went into that store and shot his wife.
>
> The Court: I'm going to overrule that one.

(emphasis added). After the trial court overruled the Defendant's objection to the doctor's testimony, the defense proceeded to argue another issue.

During Dr. Richart's testimony, the Defendant made no contemporaneous objection to any specific testimony offered by the doctor. We conclude that the Defendant's failure to specifically articulate his objection to Dr. Richart's testimony, both before and during trial, constitutes a waiver of this issue. See Tenn. R. App. P. 36(b). In State v. McGhee, 746 S.W.2d 460, 462 (Tenn. 1988), our supreme court held that in cases "where the record on a pretrial suppression motion or on a motion in limine clearly presents an evidentiary question and where the trial judge has clearly and definitively ruled," trial counsel need not offer further objections to the trial court's ruling. The Court further noted that in cases where the "issues are only tentatively suggested or the record only partially and incompletely developed in connection with a motion in limine, . . .[c]ounsel necessarily take some calculated risks in not renewing objections." Id. This is the case here.

The substance of Defendant's motion in limine against the testimony of Dr. Richart was particularly broad; therefore, the Defendant took a risk in not renewing his objection. We find that some of Dr. Richart's testimony was relevant to the State's attempted first degree murder case. Testimony from the doctor regarding the fact that the victim was shot at close range with a shotgun slug, which fragmented and caused the victim to suffer extensive injuries, was relevant to prove that

-3-

the offense was an attempt to commit first degree murder as charged in the indictment. The Defendant needed to offer an objection to the doctor's testimony, at trial, in order to fully develop the record with regard to any relevancy issue. Furthermore, a contemporaneous objection to the doctor's testimony would have permitted the trial court to clearly place on the record its reasons for overruling the Defendant's objection. Without a specific objection from the Defendant, we are unable to review this issue.

In addition, we observe that the Defendant's oral motion in limine appears to object to the relevancy of Dr. Richart's testimony to the issue of identity. The Defendant's objection specifically states that this testimony "is not relevant as to whether or not he [Defendant] went into that store and shot his wife." It is the opinion of this Court, that while the medical testimony presented was not relevant to the issue of identity, it was, in part, relevant to other issues, as noted above. Moreover, the Defendant's argument, on appeal, challenges the admissibility of this evidence as to any issue at trial. It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal. See State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). Thus, the Defendant has waived appellate review of this issue.

However, even if the trial court's admission of this evidence was error, we find that it was harmless error. As noted by the State, the victim testified, without objection from the defense, that she had been in a coma following the shooting, and stayed in the hospital for at least seven weeks. She also testified that she had undergone twelve major surgeries and had been in and out of the hospital due to injuries caused by this shooting. Therefore, we cannot say that the admission of Dr. Richart's testimony more probably than not affected the jury's verdict, when the substance of most of the evidence was before the jury via the victim's testimony. Also, the victim's testimony, along with the testimony of the other witnesses, overwhelmingly established the Defendant's guilt of attempted second degree murder beyond a reasonable doubt, without the doctor's testimony. The Defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence -- Reckless Endangerment

In his next issue, the Defendant argues that the evidence was insufficient to convict him of recklessly endangering the life of Nancy Early. He contends that his mere possession of a gun was insufficient to establish the elements of reckless endangerment. We disagree with Defendant's analysis of the proof and his legal arguments.

The Defendant was convicted by a jury of reckless endangerment committed with a deadly weapon. Reckless endangerment occurs when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (emphasis added). Reckless endangerment is a Class E felony when it is committed with a deadly weapon. Tenn. Code Ann. § 39-13-103(b).

The Defendant argues that the evidence failed to establish that he recklessly engaged in conduct that "places or may place another person in imminent danger of death or serious bodily

injury," because "he never pointed the gun at Nancy Early and there was no proof he even knew she was in the store." In support of his argument, the Defendant relies on two cases. He cites State v. Fox, 947 S.W.2d 865 (Tenn. Crim. App. 1996), wherein the reckless endangerment with a deadly weapon conviction was reversed and dismissed because there were no people anywhere near the defendant at the time he fired the gun "into the air or up into a tree top." 947 S.W.2d at 866. In Fox, a panel of this Court noted that previous cases had "recognized the potentially 'absurd' and 'unreasonable' results that may arise from permitting prosecution of one discharging 'a weapon under *any* circumstances where *any* other human being *might possibly* be present or where a stray bullet *might possibly* strike another person.'" Id. (emphasis added). The Fox court determined that reckless endangerment required an offender to engage in conduct which places or may place *another person* in imminent danger of death or serious bodily injury. Id. (emphasis added). Therefore, the absence of a "person" required the reversal of the defendant's conviction. That is not the case here, where the Defendant pointed a loaded shotgun at one person and shot another person at close range, while the victim of reckless endangerment was standing within the Defendant's line of fire and near the person who was shot.

The Defendant also cites State v. Baldwin, No. 01C01-9612-CR-00530, 1998 WL 426199, at * 3 Davidson County (Tenn. Crim. App., Nashville, July 29, 1998), perm. to app. denied. (Tenn. 1999). In Baldwin, the defendant was convicted of the attempted murder of a waitress in a restaurant and of reckless endangerment against a customer in the restaurant, who was sitting behind the Defendant at the time of the shooting. The State argued that

> because the restaurant was small and narrow, and the bullet could have ricocheted off one of the metal appliances, striking Clark, the defendant committed reckless endangerment by placing Eddie Clark in imminent danger of death or serious bodily injury when he shot Deborah Martin.

Id., at *3. A panel of this Court held that "mere speculation that Clark might have been hit by the bullet is insufficient to prove beyond a reasonable doubt that Clark was in imminent danger of death or serious bodily injury." Id.

We find that the facts and analysis of Baldwin are, likewise, not applicable to this case. In a light most favorable to the state, the evidence showed that the Defendant pointed the loaded gun at Lynnette Farley, and then turned and shot Davidson in the stomach. Nancy Early testified that she and Davidson were standing next to each other, when the Defendant entered the partition leading to the kitchen area of the store. Early further testified that the victim was standing near her, when the Defendant shot the victim. Early also stated that, after the gun fired, she moved closer to the back of the kitchen. From the evidence presented at trial, it is clear that Early was in the line of Defendant's fire, within the "zone of danger," and clearly in imminent danger of death or serious bodily injury.

In State v. Payne, 7 S.W.3d 25 (Tenn . 1999), the Tennessee Supreme Court, adopted the following definition of "imminent" from *Black's Law Dictionary*:

> Near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of happening.

7 S.W.3d at 28 (quoting *Black's Law Dictionary* 750 (6th ed.1990)). The court explained that in order "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." Payne, 7 S.W.3d at 28. The court further explained that the "zone of danger" is "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." Id. The Payne court reasoned that the state had the duty to "show that a person or class of persons were in an area in which a reasonable probability of danger existed." Id.

In the present case, we find that there was more than a mere possibility that Nancy Early might have been hit by a stray bullet. Mrs. Early was a few feet away from Casey Davidson at the time of the shooting. Unlike the reckless endangerment victim in Baldwin, who was sitting behind the defendant in that case, Early was in front of the Defendant and a reasonable probability of danger to Early existed. And, unlike Fox, we conclude that the evidence was sufficient to establish beyond a reasonable doubt that Early was in imminent danger of serious bodily injury. The Defendant is not entitled to relief on this issue.

## III. Excessive Sentencing

In his final issue, the Defendant claims that the trial court improperly applied the sentencing requirements in Tenn. Code Ann. § 40-35-101, et. seq., and improperly ordered the sentences in this case to run consecutively to a companion case. We find no error in the judgment of the trial court.

When a defendant challenges the length, range or manner of service of a sentence, the reviewing court must conduct a de novo review on the record with a presumption that the determinations made by the trial court were correct. Tenn. Code Ann. § 40-35-401(d). We condition the presumption of correctness "upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that a sentence is improper is on the appealing party. Tenn. Code Ann. § 40-35-401(d) (sentencing commission comments).

In reviewing the record, this court must consider (a) the evidence at the trial and the sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, and (f) the appellant's potential for rehabilitation. See Tenn. Code Ann. § 40-35-210; see also Tenn. Code Ann. § 40-35-102 & 103. In State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994), our supreme court said that "[t]o facilitate meaningful appellate review . . . the trial court must place on the record its reasons for arriving at

the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence."

Where one or more enhancement factors apply but no mitigating factors exist, the trial court may sentence above the presumptive sentence but still within the range. See Tenn. Code Ann. § 40-35-210(d). Where both enhancement and mitigating factors apply, the trial court must start at the presumptive sentence (i.e., the midpoint of the range for Class A felonies and the minimum sentence in the range for Class B, C, D and E felonies), enhance the sentence within the range as appropriate to the enhancement factors and then reduce the sentence within the range as appropriate to the mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court if the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and the record supports its findings. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

Here, the Defendant was sentenced as a Range III Persistent Offender. The trial court applied enhancement factors (1), (8), and (13) to his convictions in Count I (attempted second degree murder) and Count III (aggravated assault). See Tenn. Code Ann. § 40-35-114 (1), (8) & (13). The trial court also considered the Defendant's mental condition at the time of the commission of the offense, Tenn. Code Ann. § 40-35-113 (8), as a mitigating factor with respect to Count I and Count III of the indictment. The Defendant does not challenge the applicability of these enhancement and mitigating factors on appeal. Neither does the Defendant challenge his sentence for reckless endangerment in Count II, for which he received the minimum sentence of four (4) years. However, the Defendant claims that the trial court failed to properly balance the enhancing and mitigating factors as required by statute. From the record, it is clear that the trial court properly weighed the enhancing and mitigating factors in sentencing the Defendant. In considering the sentence for Count I and III, the trial court stated:

> It's not a set of scales where you just stack them up on one side and say, [w]ell, I've got all these on this side, I only have one on the other side, and bingo, instantly it's the maximum sentence. The court is supposed to rationally weigh those things. I think any rational weighing of the factors in this case, though, lead to the same conclusion that it would lead to if you were weighing them. The enhancing factors so overwhelmingly outweigh the mitigating factors that I feel that I'm not only obligated, but compelled to impose a sentence of 20 years as to Count I and that will be the sentence in Count I.

> \* \* \*

> Count 3 is the offense of aggravated assault. It carries a sentence of 10 to 15 years. The enhancing factors that the State lists there, again would be the same as the first one, previous history of criminal convictions, behavior, an unwillingness to comply with the conditions of release into the community, and committing the

offense while on bail. The same mitigating factor would be applicable. I, again, think a rational consideration of the enhancing factors when compared to the mitigating factors are such that would justify the Court of [sic] imposing a sentence of 15 years for that offense and I'm going to do that.

This Court has previously held that a defendant's "sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." See State v. Boggs, 932 S.W.2d 467, 474 (Tenn. Crim. App. 1996). A trial court has discretion in determining the weight to be afforded a particular enhancement or mitigating factor. Id., at 474-75; Hayes, 899 S.W.2d at 185 (citing Sentencing Commission comments). We find no error in the weight afforded the sentencing factors or the sentences ordered by the trial court.

The Defendant also challenges the trial court's order of consecutive sentencing. The trial court ordered the Defendant to serve the sentences in the present case consecutively to his convictions for aggravated assault, kidnaping, and unlawful possession of a weapon, in case #12714. The trial court determined that the Defendant had a record of extensive criminal activity and the Defendant was a dangerous offender. See Tenn. Code Ann. 40-35-115(b)(1) and (4). The presentence report fully supports the application of the "extensive criminal activity" factor. However, when a trial court uses the "dangerous offender" factor, it must also decide whether consecutive sentences (1) reasonably relate to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Here, the trial court failed to fully explore, on the record, the Wilkerson factors. Yet, only one factor need be proven to support a consecutive sentence. Tenn. Code Ann. § 40-35-115(b). Thus, consecutive sentencing was appropriate under Tenn. Code Ann. 40-35-115(b).

We further find that consecutive sentencing is mandated by Rule 32(c)(3)(C) of the Tennessee Rules of Criminal Procedure, which provides that:

Where a defendant is convicted of multiple sentences from one trial or where the defendant has additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

(A) To a sentence for a felony committed while on parole for a felony;

(B) To a sentence for escape or for a felony committed while on escape;

(C) To a sentence for a felony where the defendant was released on bail and the defendant is convicted of both offenses; and

(D) Any other ground provided by law.

Tenn. R. Crim. P. 32(c)(3)(C).  In addition, Tennessee Code Annotated section 40-20-111(b) provides:

> In any case in which a defendant commits a felony while such defendant was released on bail . . . and the defendant is convicted of both such offenses, the trial judge shall not have discretion as to whether the sentence shall run concurrently or cumulatively, but shall order that such sentences be served cumulatively.

Tenn. Code Ann. § 40-20-111(b) (1997).  Under these provisions, consecutive sentencing is mandatory when a defendant commits a felony while on bail and the defendant is subsequently convicted of both offenses.  At the time Defendant committed the instant offenses, he was on bail for the offenses in case #12714.  Subsequently, the Defendant was convicted for the present offense, as well as the offenses in case #12714.  Therefore, consecutive sentencing was mandatory in this case.  The Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons set forth in this opinion, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE