IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 16, 2008

## STATE OF TENNESSEE v. CRIS R. WOODS

**Appeal from the Criminal Court for Union County**
**No. 3400     E. Shayne Sexton, Judge**

_____

**No. E2008-01545-CCA-R3-CD - Filed July 20, 2009**

_____

The defendant, Cris R. Woods, appeals his conviction by a jury in the Criminal Court for Union County for reckless endangerment, a Class E felony. He contends that the evidence was insufficient to convict and that the trial court improperly denied his motion for acquittal. We agree and reverse the judgment of the trial court, and we vacate the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Conviction Vacated**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Martha J. Yoakum, District Public Defender, and Tina L. Sloan (on appeal) and Larry G. Bryant (at trial), Assistant Public Defenders, for the appellant, Cris R. Woods.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William Paul Phillips, District Attorney General; and Tracy Tipton Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the discharge of a .22 caliber rifle inside a mobile home. At the trial, Joyce Stevens testified that she lived with the defendant for twenty-eight years and that they had a daughter, who was asleep on the other side of the home when she and the defendant had a heated argument in their bedroom on March 12, 2007. She said that two guns were hanging on the wall and that a .22 caliber rifle was stored between the bed mattresses. She said that the rifle was loaded, that it was her gun, and that she used it to shoot snakes. She said the defendant pulled the rifle from underneath the mattress and was leaving. She said she was sitting on the side of the bed, about fifteen feet away from the defendant, who had entered the washroom. She said that the rifle discharged and that it was pointed "in the opposite direction," toward the hall, and downward. She

said the bullet hit the dryer, hit the floor, and then continued, but she said she did not remember in which direction.

Ms. Stevens testified that although she thought the discharge had been intentional, the defendant told her that the firing had been accidental and that the safety had not been on. She said the defendant's claims could have been true, although she acknowledged testifying at the preliminary hearing that the shooting had been intentional. She said that she called 9-1-1 after the firing, that she hung up, that the 9-1-1 service called her, and that the defendant answered the telephone call. She said she did not know what he said. She said the police arrived later. She said that she again called 9-1-1 later that night because the defendant was angry that she had called them the first time. She said the defendant was not there when the police arrived a second time. She said she called 9-1-1 a third time when the defendant returned after claiming to have cut the telephone lines. She said he cut the lines to prevent her from calling 9-1-1 again. She identified the defendant as the person who had fired the rifle.

On cross-examination, Ms. Stevens testified that she had not been afraid of the defendant. Rather, she said that she was afraid that she might hurt the defendant, that he wanted to leave, and that she was afraid for him. She said this was the reason she called 9-1-1. She said the defendant told her that the safety had not been on and that the gun had discharged. She said she kept the gun loaded to shoot snakes and acknowledged that she may not have engaged the safety. She said, however, that she and the defendant had been having an argument when the gun discharged. She repeated that the gun had not been pointed at her. She said the defendant did not threaten to shoot or to harm her. She said she had threatened him. She said the defendant had been fifteen feet away from her at an angle when the gun discharged. She said the projectile from the gun hit the bottom of the dryer, ricocheted, and at no point came toward her. She said she was not in fear for herself.

On redirect examination, Ms. Stevens testified that the defendant had been angry and threatened to harm someone other than her in their argument. She said she and the defendant had "good" arguments. She said she did not know if she had turned off the safety. She said that she did not have a gun or knife on her person during their argument.

Union County Sheriff's Deputy Larry Dykes testified that he responded to a 9-1-1 call on March 12 at the defendant and Ms. Stevens' address. He said that when he arrived, the victim was inside the trailer and was upset. He said she had tears in her eyes. He said he determined through his investigation that a shot had been fired, that it ricocheted off the dryer, and that it went into the floor. He said that although he found the rifle at the residence, the defendant was not there. He said he returned to the area later to see if the defendant had returned. He said the defendant was not there and was not there again when he responded to a second 9-1-1 call from this residence. He said that when he responded to the third 9-1-1 call, the trailer door was ajar and that Ms. Stevens told them the defendant was in the trailer with a gun. He said he saw the defendant's silhouette coming up the hallway while he and the other officer were speaking with Ms. Stevens. He said he and the other officer drew their weapons and told the defendant to show his hands. He said the defendant complied and had no weapon. He said they arrested the defendant.

On cross-examination, Deputy Dykes testified that he found no evidence showing that the bullet had traveled anywhere other than the washroom and hallway area. He said the bullet was found close to the dryer and not in the bedroom. He agreed that people could become upset for various reasons, including fear for other people.

Officer Chris Carden testified that he was a Union County Sheriff's Deputy on March 12, 2007, and that he and another officer responded to the first 9-1-1 call at Ms. Stevens and the defendant's home. He said the defendant was not home. He said Ms. Stevens was very distraught. He said Ms. Stevens brought the rifle to the officers. He said that he found the bullet in the floor but that he did not recover it. He said that the gun discharged and that the bullet struck the dryer and ricocheted into the floor. He said he returned to the home a second time and that the defendant was not there. He said the bedroom was approximately ten feet from the dryer. On cross-examination, he said he returned to the home a third time. He said the bedroom had a door. He said that a washing machine and a wall were between the dryer and the bedroom. The State rested.

The jury convicted the defendant of reckless endangerment. The trial court imposed a two-year sentence. He ordered the defendant to spend 100 days in confinement, with five years of probation. Before submitting the case to the jury, the trial court granted the defendant's motion for judgment of acquittal on count one, aggravated assault, involving the same conduct.

Relying on State v. Thomas R. Baldwin, No. 01C01-9612-CR-00530, Davidson County, slip op. at 7 (Tenn. Crim. App. July 29, 1998), the defendant claims that insufficient evidence exists to convict him and that the mere fact of a cramped space and presence of metal appliances did not create an imminent danger of death or serious bodily injury from a possible ricochet of the discharged bullet. The defendant also contends that the trial court improperly denied the motion for judgment of acquittal by improperly defining "imminent danger" as the "mere possibility of danger" in view of the trial court's statement that "many, many types of scenarios" could result from the discharge of a gun inside a home and thereby place someone in imminent danger of death or serious bodily injury. The State asserts that the evidence was legally sufficient to convict the defendant of reckless endangerment. The State claims that because Ms. Stevens was within fifteen feet of the defendant when the gun discharged, the defendant's conduct necessarily created an imminent fear of death or bodily injury. See State v. Steven Willard Self, No. 03C01-9807-CR-00227, Knox County, slip op. at 4 (Tenn. Crim. App. July 30, 1999) (stating the court had "no pause" in concluding that when the victim stood fifteen to twenty feet away from the defendant's target, the defendant created an "imminent risk of death or serious bodily injury" for the victim).[1]

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson

---

[1] The State also claims that the "inherent danger of discharging firearms" in a residence was demonstrated when the defendant was subsequently shot inside the home by his pet, a cat, who was playing with the gun. This evidence was presented at the sentencing hearing.

v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Tennessee Code Annotated section 39-13-103 (2006) defines "reckless endangerment" as recklessly engaging in conduct that places or may place another person in imminent danger of death or serious bodily injury. "Recklessness" is shown when a defendant is "aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-106(a)(31) (2006). To demonstrate an imminent threat of death or serious bodily injury, the State must prove that a person or class of persons "must be placed in reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.2d 25, 28 (Tenn. 1999). This "zone of danger" is "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." State v. Goodwin, 143 S.W.3d 771, 778 (Tenn. 2004); State v. Payne, 7 S.W.2d at 28. A person must be present in this zone of danger. State v. Goodwin, 143 S.W.3d at 778; State v. Payne, 7 S.W.3d at 28.

In the present case, the evidence showed that a .22 caliber rifle discharged in a mobile home. The testimony reflected that three people, including the defendant, were inside the home. Ms. Stevens said the defendant had left the bedroom, where she and the defendant had been arguing, and had entered the adjacent washroom, where the gun discharged. The third person was sleeping in a room at the other end of the home when the gun discharged. Law enforcement testimony also confirmed that the bullet was found in the washroom, where it had struck the dryer and ricocheted into the floor. Ms. Stevens testified that she had not been in fear of the defendant and that he had not threatened her with her gun. On the contrary, she testified that she had threatened the defendant. She testified that the gun had not been pointed at her or even toward the bedroom in which she sat when the gun discharged. Ms. Stevens also testified that she did not call 9-1-1 because she was in fear of the defendant. Rather, she telephoned because she was concerned for him. She also testified that she owned the gun and that she did not know whether she had engaged the safety when she placed it underneath the mattress.

The issue in this case is whether Ms. Stevens was in the zone of danger, such that a reasonable probability of imminent danger to her existed. From the facts before us, we conclude that she was not. Officer Carden testified that the bedroom had a door and that in the approximately ten feet between the washroom and the bedroom were a dryer, a washing machine and a wall. Ms. Stevens said that she was fifteen feet away from the defendant in another room when the gun discharged. Deputy Dykes said there was no evidence that the bullet had traveled anywhere other than the hallway and washroom area closest to the dryer. Ms. Stevens testified that the gun fired in a direction opposite from her. No reasonable probability existed that the defendant's conduct would place her in imminent danger of death or serious bodily injury. See State v. Goodwin, 143 S.W.3d at 778; State v. Payne, 7 S.W.3d at 28. Rather, there was only a "mere possibility of danger" for her. State v. Payne, 7 S.W.3d at 28. The present case resembles the situation in Thomas R. Baldwin, in

which the State argued that the narrowness of the space containing metal appliances created a risk of a ricocheting bullet that would place someone in imminent danger of death when the assailant shot another person. See Thomas R. Baldwin, slip op. at 7. The facts in Thomas R. Baldwin placed the potential victim behind the shooter, such that a mere possibility that the bullet would strike him was insufficient to convict the defendant of reckless endangerment. In the present case, Ms. Stevens testified that the gun was not pointed at her and that the defendant was not even in the same room as her when it discharged. The evidence also showed that two large metal appliances and a wall were between her and the defendant when the gun discharged. The evidence is insufficient to show that Ms. Stevens was within the zone of danger and that she was placed in imminent danger of death or bodily injury.

The State's blanket claim that anyone within fifteen feet of a shooter is within the zone of danger is unsupported by case law. The cases cited in Steven Willard Self lacked evidence showing that a potential victim was actually within the zone of danger. See State v. Fox, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996) (where a defendant shot a pistol into the air and no proof showed that anyone was in the vicinity of the shooter); State v. Michael David Culbertson, No. 03C01-9412-CR-00449, Sullivan County, slip op. (Tenn Crim. App. Aug. 30, 1995) (reflecting no proof that anyone other than the shooter, who was attempting suicide, was in the house or nearby apartment building when the shooter fired two shots into the house's ceiling). Furthermore, the language of Steven Willard Self that the State cites reveals that the victim in that case was standing within approximately fifteen to twenty feet of the shooter's target. This is unlike the present case, where Ms. Stevens testified that the gun was pointed in a direction away from her. Cf. State v. Alder, 71 S.W.3d 299, 305 (Tenn. Crim. App. 2001) (where the potential victim was in front of shooter and "more than a mere possibility" existed that the bullet might have struck the potential victim).

The defendant contends that the trial court erred in denying his motion for acquittal. On appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the evidence. See, e.g., State v. Brewer, 945 S.W.2d 803, 805 n.2 (Tenn. Crim. App. 1997). In view of our concluding that the evidence was insufficient to convict, we hold that the trial court improperly denied the defendant's motion for judgment of acquittal.

Based on the foregoing and the record as a whole, we reverse the judgment of the trial court, and we vacate the conviction.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE