# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 18, 2013

## STATE OF TENNESSEE v. DEMETRIUS D. WALTON

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 41200012      Michael R. Jones, Judge**

---

**No. M2012-02610-CCA-R3-CD - Filed September 17, 2013**

---

The appellant, Demetrius D. Walton, pled guilty in the Montgomery County Circuit Court to one count of reckless aggravated assault. The trial court sentenced the appellant as a Range II, multiple offender to seven years in the Tennessee Department of Correction. On appeal, the appellant challenges the sentence imposed by the trial court and the trial court's denial of his motion to reduce his sentence. Upon review, we affirm the length of the sentence imposed. However, we must remand to the trial court for a correction of the judgment to reflect that the appellant was sentenced as a Range II, multiple offender who was to serve a minimum of thirty-five percent of his sentence in confinement before being eligible for release.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Kimberly G. Turner, Clarksville, Tennessee, for the appellant, Demetrius D. Walton.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Chris Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The appellant was originally charged in a multi-count indictment with two counts of driving under the influence (DUI), reckless endangerment with a deadly weapon, vehicular

assault, two counts of aggravated assault, possession of a handgun while under the influence, and speeding. Pursuant to a plea agreement, the petitioner entered a guilty plea to reckless aggravated assault in exchange for the dismissal of the remaining charges. The plea agreement further provided that the appellant would be sentenced as a Range II, multiple offender and that the trial court would determine the length and manner of service of the sentence.[1]

At the sentencing hearing, Clarksville Police Officer Ivan Szczerbiak testified that on March 23, 2011, he responded to a crash site around Fort Campbell Boulevard and Lady Marion. The roadway had three lanes on one side, three lanes on the other, and a turn lane, for a total of seven lanes. Officers at the scene told Officer Szczerbiak that parts of a headlight were found at the crash site. Shortly thereafter, Officer Szczerbiak saw a vehicle with a headlight out driving north on Fort Campbell Boulevard. Officer Szczerbiak activated his blue lights and pursued the vehicle. He "paced" the vehicle at a speed of sixty miles per hour in a forty-five-miles-per-hour speed zone. Eventually, the suspect vehicle pulled over and stopped.

Officer Szczerbiak said that he approached the vehicle, which was driven by the appellant. Officer Szczerbiak asked the appellant to exit the vehicle and instructed him to perform field sobriety tests. The appellant's eyes were watery, his speech was slurred, and he smelled of alcohol. A bottle of Bud Ice was in the appellant's vehicle. Officer Szczerbiak arrested the appellant for DUI.

On cross-examination, Officer Szczerbiak said that he stopped the appellant around 2:45 a.m. He had the appellant perform a breath intoxilyzer test three times "because he was giving insufficient samples." Officer Szczerbiak said that the appellant was speeding and swerving.

Clarksville Police Sergeant Michael Wayne Caver testified that when he responded to the scene of an accident on March 23, 2011, he saw a "crushed" moped in the street near the southbound curb. The driver, Coleman Ryan Collins, had already been transported to the hospital. Sergeant Caver found numerous pieces of headlight trim and a fog lamp at the scene, which he deduced were not from the moped. Subsequently, Sergeant Caver compared the debris with the appellant's vehicle and determined "it fit like a puzzle when the pieces matched."

On cross-examination, Sergeant Caver said that he saw the appellant that night as he was being arrested for DUI and that he appeared to be cooperative. After Sergeant Caver

---

[1]The appellate record does not contain a transcript of the guilty plea hearing.

finished at the scene, he went to the jail and observed officers preparing to administer a breath test to the appellant. Officer Szczerbiak informed Sergeant Caver that the appellant had provided two insufficient samples. Sergeant Caver took over and instructed the appellant how to correctly breathe into the machine, and the appellant successfully completed the breath test.

Sergeant Caver said, "[I]nitially the – there was a statement by [the appellant] that he didn't – he didn't hit the gentleman – or didn't hit the guy." Sergeant Caver did not know if the appellant made the statement because he overheard officers talking. When Sergeant Caver asked the appellant about the collision, the appellant denied any involvement. The appellant told Sergeant Caver that in October, he had been involved in a crash in Hopkinsville. After talking with the appellant, Sergeant Caver spoke with the appellant's "ex-wife, wife, [or] girlfriend" on the telephone. She stated that the appellant had problems with the headlight before that night and had received a citation because of problems with the light. She denied, however, that the headlight had been damaged in the October collision.

Sergeant Caver said the moped appeared to have been struck from behind and knocked to the side of the road; however, the moped had not been run over. When the officers told the appellant that he may have struck someone, the appellant appeared concerned and expressed remorse. Sergeant Caver said the appellant "stated on numerous times that he – he wanted to apologize to the family."

On redirect examination, Sergeant Caver stated that the appellant was not being questioned by anyone when he spontaneously stated that he did not strike the victim. Thereafter, Sergeant Caver asked the appellant if he had struck anything with his vehicle, and the appellant said he hit a curb that morning on his way from his home in Kentucky to a bar.

As the first defense witness, Jackie Geneva Walton, the appellant's mother, testified that the appellant had one son, who was five years old. Before the collision, the appellant worked hard and had a good life; he laughed frequently and was outgoing and kindhearted.

Walton acknowledged that the appellant went to prison when he was sixteen years old because of a drug charge. After he was convicted of a second drug charge and completed his probationary sentence, the appellant changed and built a new life for himself. The appellant took classes in welding and "[p]rogramable logistics," and he received several certificates. He became a responsible, hard worker and was employed at Original Exhaust and White Hydraulics. Walton thought the appellant was earning $16.42 per hour at his primary job and $9 per hour at his second job.

Walton said that after the collision, the appellant became depressed, sad, and

withdrawn. The appellant rarely laughed, often sat on the porch and "look[ed] into space" or cried, and began to drink more. Walton believed the appellant felt guilty for the victim's injuries. When the appellant began drinking heavily, Walton encouraged him to seek rehabilitative treatment. The appellant entered and successfully completed the "Genisis" program and stopped using alcohol.

On cross-examination, Walton acknowledged that in 2004, the appellant entered a two-year drug program in Kentucky. Walton said that she thought the appellant was on probation in Kentucky for several felony charges at the time of the instant offense.

On redirect examination, Walton clarified that she thought the appellant's probationary sentence was completed when he left drug court. She stated that the appellant went to school and changed his life after completing drug court.

Miranda Ratcliff, the appellant's girlfriend, testified that before the offense, the appellant was happy, sweet, kind, generous, and liked to "go out and do stuff." Since the accident, the appellant acted "like his soul [was] gone." Ratcliff said the appellant was frequently angry and was remorseful to the point that he did not "have a life for hi[m]self. He doesn't want to do anything." For example, she stated that if she asked the appellant to go bowling, the appellant would respond, "[T]hat boy [the victim] can't bowl anymore," before getting upset and going to another room.

Ratcliff said the appellant apologized to the victim. The appellant was willing to pay restitution and had a job waiting for him at Original Exhaust.

Jeff Leavell, the appellant's supervision at Original Exhaust, stated that the appellant was a hard worker, a good welder, and was kind-hearted. Leavell said that he was not aware of the appellant's prior drug convictions; he noted, however, that the appellant never appeared to be on drugs. Leavell said the appellant worked full time at Original Exhaust and had a part-time job at White's Hydraulics. Leavell said that if the appellant were granted probation, he could work at Original Exhaust for $9.50 per hour. He opined that the appellant could probably also return to work at White's Hydraulics.

The appellant made the following allocution:

> I would like to address the Court, and ask the family for the chance to tell them that I'm very sorry. I would never, in this lifetime did [sic] anything like this. When I first seen [sic] you my first thing in my mind is I'm going to hell. I didn't think that God would want me after something like this. It was a[n]

accident; I didn't even know I did it. I'm very sorry. I'm think [sic] about it all the time, ever[y] time I close my eyes. The reason I don't sleep is because I always have a dream that my son has died in a car wreck. And I don't – I'm very sorry.

I couldn't even imagine like . . . no matter what happens here today I just want to – you, Mr. Collins, and your family and the Court to know that I did not mean to do that. I didn't even know I did it; I'm sorry. If I – if I could trade places with you, I swear to you I would.

The appellant denied that he was drinking at the time of the incident. He said, "After the accident I went into a dark place and began drinking heavy, and I submitted myself into the rehab just here last month, and successfully completed that."

The presentence report reflected that on January 31, 2006, the appellant was convicted in Kentucky of two felony offenses and received a sentence of five years probation for each offense. The sentences were to be served consecutively for a total effective sentence of ten years.

The State referred the court to the victim impact statement of the victim's girlfriend and mother of his five-month-old baby.[2] According to the statement, at the time of the crash, the victim was driving his moped to work. As a result of the accident, the victim was paralyzed from the upper waist down. He used a wheelchair to get around and was unable to "perform bodily waste functions on his own."

Defense counsel said that

[w]hen we stood before the [trial court, the appellant] acknowledged that he operated a vehicle that he knew had a defective headlight, that he had impaired visibility, that he was not paying appropriate attention, and that he was reckless in the operation of that vehicle, and that he caused the injuries to [the victim].

Defense counsel asserted that there was no proof the appellant was under the influence at the

_____

[2]The victim impact statements were not included in the presentence report. Later, the State amended the presentence report and attached the statements. The amended presentence report is not included in the appellate record.

time of the collision. Defense counsel stated that the appellant acknowledged hitting something while driving his "large GMC Yukon," but he did not stop because he thought it was a curb.

Defense counsel contended that the testimony of the appellant's mother established that the appellant was not on probation at the time of the instant offense and that the State's contention that the appellant was on probation was "speculation." Defense counsel stated that the victim "has outrageous[] medical bills that insurance won't completely cover" and that the appellant was willing to "pay for the rest of his life towards the medical bills."

The court stated that the appellant was a Range II offender being sentenced for a Class D felony; therefore he was subject to a sentence between four and eight years. The court observed that the appellant's sentence could be mitigated under only factor (13), the so-called "catch-all" factor. See Tenn. Code Ann. § 40-35-113(13). The court stated that the appellant was remorseful, employed, had "done well for a certain period of time since he was released," and had entered a guilty plea.

As enhancement factors, the court applied factor (1), that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). The court stated that the appellant had previously been convicted of tampering with evidence, simple possession of marijuana, drug paraphernalia, and criminal trespassing. Additionally, the court applied factor (6), that the personal injuries inflicted upon the victim were particularly great, noting that the appellant had essentially conceded this factor. See Tenn. Code Ann. § 40-35-114(6). The court also applied factor (13)(C) because the presentence report reflected that the appellant was on probation at the time of the offense. See Tenn. Code Ann. § 40-35-114(13)(C).

The court weighed the enhancement and mitigating factors and sentenced the appellant to seven years. The court noted that the appellant had previously been in the penitentiary, had served a probationary sentence, and had been through drug court; nevertheless, the appellant "seemingly did not learn from that, in terms of not getting into anymore trouble." The court found that the appellant had a long history of criminal conduct and that confinement was necessary to avoid depreciating the seriousness of the offense. Accordingly, the court denied alternative sentencing and ordered the appellant to serve his sentence in confinement.

Approximately two months later, the court held a hearing on the appellant's motion to reduce his sentence. In support of the motion, the appellant submitted a letter which stated that the appellant completed drug court and that his ten-year probationary sentence in

Kentucky "was successfully terminated prior to March 23, 2011." The State conceded that the appellant was not on probation at the time of the offense. After consideration, the trial court again determined that a seven-year sentence was appropriate. However, because the original judgment failed to reflect the appellant's offender classification, the court entered an amended judgment, which stated that the appellant was a Range I, standard offender who was eligible for release after service of thirty percent of his sentence. On appeal, the appellant challenges the sentence imposed.

## II. Analysis

Initially, we note that the record does not contain a transcript of the appellant's guilty plea hearing. However, we have determined that the record is adequate for appellate review of the sentence. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012).

In his brief, the appellant argues: (1) that the trial court "erred in weighing multiple facts as only one mitigating factor under [Tennessee Code Annotated section] 40-35-113[(13)]"; and (2) that the trial court erred in denying the appellant's motion to reduce his sentence. The appellant erroneously contends that the standard of review of the trial court's sentencing determinations should be de novo. We acknowledge that previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has further explicitly stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should

consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." Id. at 345-46. "[They are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

The appellant specifically appeals the length of his sentence and the denial of his motion to reduce his sentence. Rule 35 of the Tennessee Rules of Criminal Procedure provides:

> (a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.
>
> (b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

> (c) Hearing Unnecessary. The trial court may deny a motion for
> reduction of sentence under this rule without a hearing.

Tenn. R. Crim. P. 35(a)-(c). "This rule does not vest the defendant with a remedy as of right." State v. Elvin Williams, No. M2006-00287-CCA-R3-CO, 2007 WL 551289, at *1 (Tenn. Crim. App. at Nashville, Feb. 22, 2007). The Advisory Commission Comments to Rule 35 explain that "[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice."

Our supreme court has explained that "appeals from Rule 35 motions to reduce sentences are separate and distinct from appeals seeking review of the original judgment, including the sentence imposed [in that the] denial of a Rule 35 motion is not the equivalent of imposing a sentence but simply reaffirms the sentence previously imposed." State v. Ruiz, 204 S.W.3d 772, 777 (Tenn. 2006). The denial of Rule 35 motions are reviewed under an abuse of discretion standard. Id. (citing State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993)).

The appellant complains that the trial court considered the appellant's work history, remorse, rehabilitative potential, cooperation with police, and guilty plea "as one single factor rather than considering them as four separate factors under" the catch-all mitigation factor (13). Tenn. Code Ann. § 40-35-113(13). The appellant contends that if the trial court had "considered the mitigating factors individually, rather than as a whole, [it] would have been faced with four mitigating factors and three enhancing factors then subsequently, following the hearing on the Motion to Modify, with four mitigating factors and only two enhancing factors." The State responds that the trial court did not abuse its discretion in sentencing the appellant.

The appellant's argument is essentially that the number of mitigating factors outweighs the number of enhancement factors. However, this court has repeatedly stated that a "'sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years.'" State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 474 (Tenn. Crim. App. 1996)). Regardless, the weighing of mitigating and enhancing factors is left to the trial court's sound discretion. Carter, 254 S.W.3d at 345. Furthermore, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Id. at 344. Accordingly, the appellant is not entitled to relief on this basis.

At the hearing on the motion to reduce the appellant's sentence, the appellant adduced

proof that, contrary to the trial court's finding at the sentencing hearing, the appellant was not on probation at the time of the offense. The State conceded the error. The trial court determined that the seven-year sentence was justified by the application of the remaining enhancement factors, namely factor (1), that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and factor (6), that personal injuries inflicted upon the victim were particularly great. Tenn. Code Ann. § 40-35-114(1) and (6). The weighing of mitigating and enhancement factors is in the trial court's discretion, and this court is bound by the trial court's sentencing decisions as long as sentence is imposed in a manner consistent with the purposes and principles of the Sentencing Act. Carter, 254 S.W.3d at 345-46. Because the trial court's imposition of sentence is consistent with the purposes and principles of the Sentencing Act, the sentence is presumptively correct, and we cannot reweigh the enhancing and mitigating factors. See Carter, 254 S.W.3d at 344-45. We conclude that the trial court did not abuse its discretion in denying the appellant's Rule 35 motion.

However, our review of the record reveals that the amended judgment states that the appellant was a Range I, standard offender who was eligible for release after service of thirty percent of his sentence. The trial court clearly stated at the sentencing hearing, and reiterated at the Rule 35 hearing, that the appellant was a Range II, multiple offender with release eligibility after serving thirty-five percent of his sentence. It is well established that where there is a conflict between the judgments of conviction and the transcript, the transcript controls. See State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985). Accordingly, we must remand to the trial court for entry of a corrected judgment reflecting the correct offender classification and release eligibility.

### III.  Conclusion

In sum, we conclude that the trial court did not err in determining the length of the appellant's sentence. We affirm the appellant's sentence but remand for entry of a corrected judgment.

_____
NORMA McGEE OGLE, JUDGE

-10-