IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 14, 2012

## STATE OF TENNESSEE v. PAUL RICHARDSON

**Appeal from the Criminal Court for Shelby County**
**No. 05-03372      James C. Beasley, Jr., Judge**

---

**No. W2011-01434-CCA-R3-CD  - Filed June 18, 2012**

---

A jury convicted the defendant, Paul Richardson, of aggravated robbery, a Class B felony, aggravated burglary, a Class C felony, aggravated assault, a Class C felony, and unlawful possession of a handgun by a convicted felon, a Class E felony. The trial court imposed consecutive sentences for the aggravated robbery and aggravated assault convictions; the aggravated burglary and felon in possession of a handgun convictions were to run concurrently with all other counts, for an effective sentence of thirty-nine years. On appeal, this Court overturned the aggravated assault conviction, and remanded to allow the trial court to restructure the service of the remaining sentences to include consecutive sentencing. On remand, the trial court imposed consecutive sentences for all three remaining convictions, for an effective sentence of forty-one years. The defendant appeals the imposition of consecutive sentences. After a careful review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Lance R. Chism (on appeal) and Thomas Clifton Harviel (at trial), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Paul Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Hagerman and Dean DeCandia, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

**Factual and Procedural History**

The defendant's convictions were the result of a home invasion which took place on December 24, 2003. *State v. Richardson*, No. W2008-02506-CCA-R3-CD, 2010 WL 3791973 (Tenn. Crim. App. Sept. 29, 2010). At approximately 10:00 p.m. on Christmas Eve, the defendant and another man, who were both dressed in black and wearing bullet-proof vests, entered a home at which several women and over a dozen children were gathered. The defendant wore a badge or camera around his neck, causing some of the occupants to initially believe the men were police officers. The women were having their hair done by Jenell Allen, who lived in the home and ran a salon from a back laundry room. The defendant and the other man, who were armed with a handgun and rifle respectively, entered through the unlocked screen door and began asking for "the money," "the weed," and "J-Mack," which was a moniker shared by Ms. Allen's husband and an individual who lived across the street. When the women back in the "hair room" proved unable to produce J-Mack or "the weed," the defendant proceeded to rob them. Ms. Allen gave the defendant between one and two hundred dollars after he pointed the gun at her and threatened to kill her. The defendant also pointed the gun at and demanded money from Lynette Johnson, who had no money with her. The defendant then robbed and assaulted Pandora Powell. The defendant took Ms. Powell's money by searching her pockets and her bra, where she had twenty dollars. Ms. Powell believed the defendant would kill her because he was unmasked, and Ms. Allen testified Ms. Powell was so frightened she "used the rest room on herself." After the defendant had robbed the other women in the "hair room," he returned to Ms. Powell, who was huddled in a corner with her arms covering her head, and searched her bra again. Anita Williams, who had been in a separate room with some of the children, saw the defendant's accomplice, who was masked and who did not observe her among the children, peek into the room and then close the door. She then heard the other children screaming and went into the hallway, and the defendant, who was not masked, pointed a pistol at her, asking for J-Mack; she dropped her purse, which he took as he fled. When the men left the house, Ms. Allen was hyperventilating and required medical attention. At trial, the defendant introduced the testimony of two alibi witnesses, his brother, Edward Richardson, and his former girlfriend, Wanda Washington. The defendant also had an expert witness testify regarding the accuracy of eyewitness identifications.

The trial court sentenced the defendant to twenty-five years as a Range III persistent offender for the aggravated robbery; to ten years as a Range III persistent offender for the aggravated burglary; to fourteen years as a Range III persistent offender for the aggravated assault; and to six years as a career offender for the convicted felon in possession of a handgun conviction. The trial court ordered the sentence for aggravated assault to be served consecutively to the sentence for aggravated robbery, and the remaining sentences were ordered to run concurrently with all other convictions for an effective sentence of thirty-nine years.

After his conviction, the defendant appealed the sufficiency of the evidence supporting his convictions and challenged his conviction for aggravated assault on the basis that the indictment had charged that the defendant did "knowingly commit an assault on PANDORA POWELL and by use of a deadly weapon, cause bodily injury," but the trial court had charged the jury with what it considered the lesser included offenses of aggravated assault by "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury" and aggravated assault by "intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard that contact as extremely offensive or provocative." The jury convicted the defendant of aggravated assault "by causing the victim to reasonably fear imminent bodily injury." This Court upheld the sufficiency of the evidence but reversed the conviction for aggravated assault, concluding that the defendant was convicted based on an element different from that charged in the indictment. *State v. Richardson*, 2010 WL 3791973, at *11. Because the aggravated assault conviction was the only count which was imposed consecutively to any other count, the case was remanded "for the purpose of allowing the trial court to restructure the manner of service of the remaining sentences to include consecutive sentences, if the court deems it to be appropriate." *Id.* at *1.

On remand, the parties entered a consent order reflecting the fact that the trial court reviewed portions of the appellate record in *State v. Richardson*, 2010 WL 3791973, including the transcript of evidence, transcript of the sentencing hearing, and the exhibits. At the May 28, 2008 sentencing hearing, the prosecution had introduced judgments for the defendant's prior convictions. The exhibits reflect that the defendant was convicted of: (1) reckless endangerment, a Class E felony, on February 14, 1997, in case no. 96-11837; (2) aggravated robbery, a Class B felony, on February 10, 1998, in case no. 97-07016; (3) aggravated robbery, a Class B felony, on February 10, 1998, in case no. 97-07014; (4) sale of a controlled substance (0.5 grams or more of cocaine), a Class C felony, on October 18, 1994, in case no. 94-01783; (5) attempt to commit aggravated robbery, a Class C felony, on October 18, 1994, in case no. 94-05834; (6) uttering forged paper, a Class A misdemeanor, on November 21, 1991, in case no. 90-05231; and (7) theft of property valued over $1,000, a class D felony, on October 18, 1994, in case no. 94-01933. The exhibits also show a federal conviction for felon in possession of a firearm on October 23, 2003 in case no. 2:04CR20344-01-MI. The prosecution also introduced a presentencing report that showed that the defendant had held two previous jobs: as a painter/laborer with a staffing service from October 1, 2002 to June 30, 2003, and as a warehouseman from January 1, 1996 to March 1, 1997. The presentencing report also reflected several misdemeanor convictions, spanning from 1989 to 2003 and including assault and battery, reckless driving, six convictions for driving with a suspended license, marijuana possession, simple assault, harassment, public intoxication, failure to renew motor vehicle license, evading arrest, and a "weapons offense." The defendant's juvenile record was also introduced into evidence;

the defendant had been adjudicated delinquent in Tennessee for larceny and possession of a controlled substance and in Arkansas for theft of property, breaking and entering, and attempted theft. The proof at the 2008 sentencing hearing also included the defendant's testimony in mitigation. The defendant testified that he was born in 1970 and that, due to an automobile accident in 1996, he had five steel rods in his right arm, as well as arthritis. The defendant additionally testified that he had been shot in February 2004, and that a bullet was lodged in his chest. He testified regarding some partial paralysis he had experienced on his left side and stated that his left leg occasionally became swollen as a result. The defendant's medical records corroborating his gunshot injuries were introduced at the hearing. The defendant noted that his age, physical condition, and current confinement under federal law should be taken into consideration as mitigating circumstances.

At the May 19, 2011 sentencing hearing, the trial court, having reviewed the evidence previously introduced, ordered all three remaining convictions to be served consecutively to one another, for an effective sentence of forty-one years. The trial court ordered the sentences to be served consecutively based on a finding that the defendant had an extensive record of criminal activity, that the defendant was a professional criminal, and that the defendant was a dangerous offender whose behavior showed little or no regard for human life and who had no hesitation about committing a crime in which the risk to human life was high. In finding the defendant a professional criminal, the trial court consulted the presentence report prepared for the original sentencing hearing, which the court found showed that the defendant "only held jobs for a very minimal amount of time" and demonstrated "no normal source of income other than by committing offenses." The trial court also noted that many of the offenses involved the taking of property. In finding that the defendant had an extensive record of criminal activity, the trial court likewise referred to the defendant's prior convictions and the other exhibits introduced at the first sentencing hearing. The trial court further found that the circumstances surrounding the commission of the offense were aggravated, that confinement for an extended period of time was necessary to protect society, and that the aggregate length of the sentence reasonably related to the offenses for which the defendant was convicted. In doing so, the trial court recounted the circumstances of the crime:

> The facts in this case are that Mr. Richardson entered a residence that had a house full of women and children on Christmas Eve night with the intent to commit an aggravated robbery. That he accosted these women. That he placed a gun in their face. One of the ladies . . . testified that she was so afraid that, again, with all due respect to her, that she urinated on herself. This lady in particular stated . . . because she was able to see Mr. Richardson's face she thought she was going to

-4-

die. . . . That he fondled her breast and went inside her bra to retrieve her money. That he came back and did it again. And that she actually cow[ered] down in a corner covering her face because she felt like she was fixing to die.

The other lady who was robbed went into hysterics, had to be taken to the hospital. They said that she was hyperventilating and couldn't breathe as a result of all of this.

The house contained, it was a house full of children and a house full of women and those were the victims that Mr. Richardson and others cho[]se to rob.

Again, it was pointed out and the Court pointed it out and the Court still feels that way that the mere fact that this was on a particular evening, Christmas Eve evening, this was a house full of women and children who were there celebrating the holiday season, they were there, if I recall correctly, one of these ladies had a business doing hair. There were women there getting their hair done. Again, celebrating the holidays. Children running around all over the house again during all of this. And Mr. Richardson and others choose to commit this offense on that particular night in the manner in which they committed it shows a total . . . anti-societal life-style. They were very serious nature of this offense or this offense was considered a very serious in the manner in which it was committed . . . .

The trial court also noted that it took the mitigating evidence into account, including that introduced at the 2008 sentencing hearing.

**Analysis**

The defendant appeals the imposition of consecutive sentencing, arguing that, while his criminal history is extensive, the total sentence is not justly deserved based on the seriousness of the offense, the defendant's age, health, federal sentence, and given the fact that the crimes in question carry high sentences due to their seriousness. The defendant further asserts that the record does not show that he is a dangerous offender or that he derived a major source of his livelihood from criminal activity. The defendant argues that his age and a federal sentence he is serving make it unnecessary to impose consecutive sentences to protect the public and that the circumstances behind this single criminal episode are not so

different from a "typical home invasion" as to warrant consecutive sentencing. The defendant also alleges error in the trial court's decision to run the sentences consecutively with the defendant's federal sentence.

A defendant may appeal the imposition of consecutive sentences under Tennessee Code Annotated section 40-35-401 (2010). Appellate review is de novo on the record with a presumption of correctness afforded to the findings of the trial court. T.C.A. § 40-35-401(d). This presumption of correctness is premised on "'the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Alder*, 71 S.W.3d 299, 305 (Tenn. Crim. App. 2001) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991)). However, the imposition of consecutive sentences "is a matter addressed to the sound discretion of the trial court." *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010). The burden of showing error is on the appealing party. T.C.A. § 40-35-401, Sentencing Comm'n cmt. A court may order consecutive sentencing if it finds by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> . . . [or]
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

T.C.A. § 40-35-115(b). In reviewing the sentence imposed, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. *State v. Hayes*, 337 S.W.3d at 264; T.C.A. §§ 40-35-102, -103, -210(b).

The defendant concedes that his criminal history is extensive. This factor alone will

support consecutive sentencing. *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997); T.C.A. § 40-35-115. Nevertheless, the defendant claims that consecutive sentencing makes the length of his sentence not "justly deserved in relation to the seriousness of the offense" and is "greater than that deserved for the offense committed," in violation of general sentencing principles. T.C.A. §§ 40-35-102(1), -103(2); *see State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (noting that "consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed'"). The defendant cites his age, health, federal sentence, the fact that the convictions sprang from a single episode, the fact that the offenses already carry relatively lengthy sentences, and the fact that his prior record has been used for enhancement in support of his contention.

We conclude that the defendant's consecutive sentences do not violate general sentencing principles. While the defendant's convictions in this case sprang from a single criminal episode, the trial court found that the circumstances were aggravated in that the defendant participated in a home invasion on Christmas Eve, that his victims were women in a houseful of children, and based on the testimony that he also committed the assault on Ms. Powell. While the defendant's sentences may already be lengthy due to the seriousness of the crimes he committed, this does not make consecutive sentencing inherently unjust; in fact, statutory law particularly instructs courts to examine the seriousness of the offense when evaluating whether the sentence is justly deserved. T.C.A. § 40-35-102(1). That the defendant is in his forties, in poor health, and serving a federal sentence also does not make the consecutive sentences less "justly deserved in relation to the seriousness of the offense" or "greater than that deserved for the offense committed." Furthermore, the court may use the defendant's prior record both for enhancement and to show an extensive criminal history. *See State v. Marshall*, 888 S.W.2d 786, 788 (Tenn. Crim. App. 1994).

Although the defendant's extensive criminal history alone is sufficient to support consecutive sentencing, the trial court also did not err in finding the defendant a professional criminal or dangerous offender. The defendant objects to the trial court's conclusion that he is a "professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood." T.C.A. § 40-35-115(b)(1). The defendant contends that because the record shows that his aggravated robberies and thefts netted him rather modest amounts (including the one to two hundred dollars from Ms. Allen, the twenty dollars from Ms. Powell, and the purse from Ms. Williams in the present case), because there was no proof regarding the economic benefits underlying the sale of cocaine or uttering forged paper convictions, and because one of his convictions was for *attempted* aggravated robbery and not the completed crime, the trial court was not justified in concluding that he derived a major source of his livelihood from criminal activity.

Although the defendant's "livelihood" may not have been opulent, there was enough evidence to conclude that crime constituted a major source of it. Many of the defendant's prior convictions were for crimes committed for the purpose of economic benefit, including the two convictions for aggravated robbery, the conviction for attempted aggravated robbery, the conviction for selling a controlled substance, the conviction for theft, the conviction for uttering forged paper, and the juvenile offenses for larceny, theft of property, breaking and entering, and attempted theft. Although the defendant's victims in the present case did not produce large sums during the robbery, the proof at trial suggests that the defendant's intended victim had both "money" and "weed." At the time he was charged, the thirty-three-year-old defendant's sparse work history showed only two brief periods of employment. *See Adams*, 973 S.W.2d at 231 (noting the defendant had no work history and obtained money by means other than employment). The trial court did not err in finding him a professional criminal.

In order to impose consecutive sentencing on the basis of finding the defendant a "dangerous offender," the court must not only find that the defendant's behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high, but must also find that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). These additional findings are necessary safeguards when sentencing is based on the "dangerous offender" provision because this category is the most subjective and hardest to apply. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court found that the defendant's behavior indicated little or no regard for human life and that the defendant had no hesitation about committing a crime in which the risk to human life was high, and it made the additional findings that the terms were reasonably related to the severity of the offenses committed and necessary to protect the public from further criminal acts. In making these findings, the trial court noted the circumstances of the crime committed, including the fact that it was Christmas Eve, the vulnerability of the victims, the presence of over a dozen children, and the testimony regarding the assault on Ms. Powell. The record also shows that the defendant pointed the gun at several victims while he robbed them, that he has been convicted of numerous violent crimes only to offend again, and that at the sentencing hearing, the defendant claimed he had been "framed" for his prior offenses rather than taking responsibility. *See State v. Turner*, 41 S.W.3d 663, 675-676 (Tenn. Crim. App. 2000) (finding that failure to accept responsibility indicated the defendant was a "continuing threat to the public"). While the defendant's age and health may have an impact on the analysis of whether consecutive sentencing is necessary to protect the public, the trial court properly considered these mitigating circumstances in imposing the sentences. We conclude the trial court did not err.

The trial court's decision to run the sentences consecutively with the defendant's federal sentence is subject to Tennessee Rule of Criminal Procedure 32(c)(2)(B), which provides that:

> [i]f, as the result of conviction in another state or in federal court, the defendant has any additional sentence or portion thereof to serve, the court shall impose a sentence that is consecutive to any such unserved sentence unless the court determines in the exercise of its discretion that good cause exists to run the sentences concurrently.

We note parenthetically that the Tennessee Supreme Court has stated that there are only two avenues for a federal sentence to be made concurrent with a state sentence: for the Bureau of Prisons to designate the state prison as the place of confinement or for the Bureau of Prisons to accept into federal custody a state prisoner who has not fulfilled a state sentence. *Faulkner v. State*, 226 S.W.3d 358, 363-364 (Tenn. 2007) (citing Erin E. Goffette, Note, *Sovereignty in Sentencing: Concurrent and Consecutive Sentencing of a Defendant Subject to Simultaneous State and Federal Jurisdiction*, 37 Val. U.L. Rev. 1035, 1057-58 (2003)); *see also Faulkner v. State*, No. W1999-00223-CCA-R3-PC, 2000 WL 1671470, at *3 (Tenn. Crim. App. Oct. 17, 2000) (granting post-conviction relief to defendant who pled guilty in exchange for concurrent federal/state sentencing when the federal government, which was "under no obligation to take state prisoners into custody until released from the state sentence," refused to accept the defendant into custody (citation omitted)). Rule 32(c)(2)(B) requires the court to run the sentences consecutively absent good cause; the defendant has not presented a persuasive argument that the trial court abused its discretion in declining to find good cause.

## CONCLUSION

Because the trial court could properly have imposed consecutive sentences based on its finding that the defendant's criminal history was extensive, its finding that the defendant was a professional criminal, or its finding that the defendant was a dangerous offender, and because the court did not abuse its discretion in making the sentences consecutive to the defendant's federal sentence, we affirm the trial court's imposition of consecutive sentences.

_____
JOHN EVERETT WILLIAMS, JUDGE