# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 3, 2013

## STATE OF TENNESSEE v. SAMUEL BLAKE MANESS

**Direct Appeal from the Circuit Court for Henderson County**
**No. 11129-2    Donald Allen, Judge**

**No. W2013-00504-CCA-R3-CD  -  Filed January 3, 2014**

The defendant, Samuel Blake Maness, was convicted of robbery, aggravated burglary, and assault and is currently serving an effective twelve-year sentence in the Department of Correction.  On appeal, he contends that: (1) the evidence is insufficient to support his convictions; and (2) consecutive sentences were improperly imposed.  Following review of the argument and record, we affirm the convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Stephen M. Milam, Lexington, Tennessee, for the appellant, Samuel Blake Maness.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; James G. Woodall, District Attorney General; and Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

At approximately 3:00 a.m. on June 18, 2011, the victim, Thurman Bailey, was asleep in his bed.  The victim woke up when a man, whom he recognized as the defendant, entered the room and jerked him from his bed.  The victim landed on his back on the floor, and the defendant pinned him down and began beating him.  The defendant then grabbed the victim's wallet, which contained between $175 and $200.  The victim's roommate, Delano Jeffries, who had been asleep in another room, was also awoken by the commotion.  Mr. Jeffries went into the victim's bedroom and observed the defendant, whom he knew previously, "beating"

the victim. According to Mr. Jeffries, the defendant then fled, and he called the police. The victim was taken by ambulance to the hospital, where he remained overnight. He suffered facial injuries and lost consciousness for some period of time.

The defendant was indicted by a Henderson County grand jury for robbery, aggravated burglary, and aggravated assault. A jury trial was held on June 13, 2012, at which multiple witnesses, including the victim and Mr. Jeffries, testified. In addition to describing the above sequence of events, the victim testified that he had previously known the defendant for over a year and, further, that the defendant did not have permission to be in his home on that occasion. The victim acknowledged that he had seen the defendant after these events and had even gone to his home on occasion to eat. The victim also related that two to three days after the incident, the defendant's wife returned his wallet to him, but the cash was gone.

Mr. Jeffries testified that he identified the defendant by name to police as the intruder on the evening this occurred. He acknowledged testifying at the preliminary hearing in this case and stating that he did not know who had attacked the victim. Mr. Jeffries related that he did not want to get the defendant in trouble because they were friends. However, he testified that since then, he had been "in recovery" and was a "different person," and he felt that he had to tell the truth, that being that the defendant was the person who assaulted the victim.

The State also called three law enforcement officers. Officer Tonya Warren testified that she responded to the call at the victim's residence around 3:00 a.m. Although she was unable to speak with the victim, who was transported to the hospital, Mr. Jeffries did inform her that the defendant was the perpetrator. Officer Warren testified that she was familiar with the defendant and that she had been him in the area while responding to the scene. Lieutenant Donna Hetherington also responded and worked the scene. As part of her investigation, Lt. Hetherington interviewed the defendant's wife, who acknowledged to the lieutenant that she had returned the wallet to the victim.

After the State rested its case in chief, the defense called multiple witnesses to the stand, including the defendant himself. The first witnesses, Delicia Boales, testified that the defendant's sister lives with her and is a diabetic who sometimes need someone to stay with her when her blood sugar levels were unstable. Ms. Boales testified that on June 17, 2011, she saw the defendant while he was walking his dogs. She told him that he needed to stay with his sister the following morning because Ms. Boales had to go to work and could not remain with her. Later that evening, around 7:30 or 8:00 p.m., Ms. Boales picked up the defendant at his residence and brought him to her house. Ms. Boales testified that she had a small child in the house and was up three or four times during the night to check on the baby. Each time, she observed the defendant sleeping on the living room floor. She testified

that the defendant was still sleeping when she left for work at 4:45 a.m.  However, Ms. Boales acknowledged that she did not specifically observe the defendant at 3:00 a.m.

The defense also called Chelsea Maness, the defendant's sister, who confirmed the above testimony.  Ms. Maness testified that, on the evening of June 17, 2011, the defendant came to Ms. Boales' house to stay with her while Ms. Boales went to work the following morning.  Ms. Maness testified that the defendant arrived around 7 or 8:00 p.m.  She also testified that the defendant was asleep in the house each time she got up during the night.

The defendant's wife, Jessica Maness, also testified.  She stated that on June 17, she and the defendant were arguing, and they decided that he would spend the evening at Ms. Boales' house with his sister.  According to the defendant's wife, she informed officers where the defendant was when they came to her home and questioned her.  She further denied that she had ever returned the wallet to the victim or that she had ever given a statement to police that she had done so.  The defendant's wife testified that, after this occurred, the victim had subsequently moved next door to them.  She indicated he often came over for food, to bathe and use their bathroom facilities, and had even ran an extension cord from their home in order to have air conditioning.

The defendant took the stand in his own defense.  He testified that, while he was walking his dogs on June 17, 2011, he was stopped by Ms. Boales, who informed him that his sister needed him to stay with her in the morning.  After returning home and speaking with his wife, the defendant left with Ms. Boales and went to her home.  He stated that he remained at the home all night.  The defendant also testified that the victim now lives next door to them and often was present at their home.  He stated that, on one occasion, the victim appeared remorseful for the events which were occurring.  The defendant gave specific testimony that he did not assault the victim or take his money.

In rebuttal, the State recalled Officer Tonya Warren and Lt. Donna Hetherington.  Officer Warren testified that the defendant's wife specifically informed her that she did not know where the defendant was when police came to question him.  Additionally, Lt. Hetherington testified that the defendant's wife specifically informed her that she had returned the wallet to the victim a few days after the incident.  The interview, which was recorded, was admitted into evidence.

After hearing the evidence, the jury found the defendant guilty of robbery, aggravated burglary, and the lesser-included offense of assault.  Thereafter, a sentencing hearing was held on August 21, 2012.  The pre-sentence report was admitted into evidence without objection from the defendant.  The evidence also included testimony from the defendant, his wife, and his father-in-law, Kenneth Thomas.  Mr. Thomas testified that if the defendant was

afforded an alternative sentence, he would give the defendant a job mowing lawns for his business. He testified that he believed that he could keep the defendant "out of trouble." He acknowledged that the defendant had had problems before, but he believed that the defendant had learned his lesson. Mr. Thomas also testified that he believed that the defendant needed to be home with his wife and children.

The defendant's wife testified that she and the defendant had two children together, ages four and five, and that she needed his help with the children. She stated that she was unable to work outside the home because she suffered from back problems and anxiety issues. According to his wife, since his incarceration, the defendant had changed.

The twenty-four-year old defendant testified that he had spent seventy-two days in jail and had spent the time thinking about his life and his family. He indicated that he had written a statement and a letter for the pre-sentence report, which indicated his remorse. The defendant testified that he was sorry and that he wished he had owned up to his actions rather than going to trial. He acknowledged his responsibility for the crimes and again expressed remorse. The defendant testified that his involvement in the crimes was the result of his drug usage. He continued, stating that he wanted to change his life and to be there for his two little boys. He specifically stated that he would be able to comply with any rules which were imposed upon him by the court or a probation officer.

In sentencing the defendant, the trial court made extensive findings in this case. Although some are not specifically addressed to the raised issue of consecutive sentencing, we nonetheless include them, as they were relied upon by the trial court in making its consecutive sentencing determination. The trial court stated:

> Now, the Court as far as enhancing factors, the Court finds number 1 that the defendant does have a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. By my calculation, he has at least nine prior misdemeanor convictions as an adult. He also has prior criminal behavior. According to this report, he talks about having used marijuana, cocaine and he talked about consuming alcohol as a minor . . . and all of that is certainly criminal behavior and I will give that criminal behavior plus these criminal convictions great weight for enhancing purposes.
>
> I believe also there are some I believe about seven traffic related convictions as well as far as criminal behavior. I will give all of that great weight for enhancing purposes.

I will say also apparently he has now received another felony conviction for Theft of Property over the value of $500. I don't consider that as a prior conviction, but it is now a conviction on his record for which he committed on December 19th, 2011. While he was out on bond [on] . . . this case for which he is being sentenced, he was arrested on a new case involving theft over $500 and has now entered a plea and been convicted of that theft of property over $500 and again that is a conviction the Court can consider for enhancing purposes. Also the fact that is shows behavior committed by the defendant after his arrest in this case. I will give all of that great consideration for enhancing purposes.

Also the Court finds as an enhancing factor that the defendant before trial in this case on June the 13th of 2012, before his trial in this case and also before sentencing in this case has failed to comply with the conditions of a sentencing involving release into the community. By my calculations by reviewing this report on at least six different occasions while he was on probation, he went out and committed new offenses. . . . I do find that to be an enhancing factor and I will give that factor great weight as well.

Also the Court finds as an enhancing factor that at the time that he committed these two felonies of Robbery and Aggravated Burglary and also at the time he committed this misdemeanor offense of Assault, he was already on probation out of Henderson County General Sessions Court for Driving on Suspended License Fourth Offense. I find that to be an appropriate enhancing factor and I will give that factor great weight.

Also the Court finds as an enhancing factor that the defendant has previously been adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. Again, when you review this presentence report at least on five different - - he has five different prior felonies as a juvenile which can be considered for enhancing purposes. I do find that to be appropriate factor and I will give that factor great weight as well.

Now, specifically as far as these enhancing factors that I've talked about, I want to talk about his prior record because this really gives the Court some information about [the defendant] and about his history. Unfortunately his history begins when he was just age 13. He was charged with rape of a child on December the 29th of 2001 as a juvenile. He was charged with that delinquent act. He was adjudicated to have committed that delinquent act.

-5-

According to this report, the disposition was he [was] referred to residential treatment in a sex offender facility and he was ordered to receive therapy and counselling [sic] on sex abuse issue[]. It says returned to Timber Springs upon placement as sex offender program. You know, back in December of 2001, when he was just 13 years [old], he committed probably one of the most serious offenses a person can commit that being rape of a child for which he was found to be delinquent.

Then in December of 2003 just two years later when he is age 15, he is found to have committed the delinquent act of vehicle burglary. He was placed on juvenile state probation and ordered to pay court costs and fines and write a 1000 word essay disposition. And then just a few months later on May the 31st of 2004 when he was age 16, he was charged with Aggravated Assault, Possession of a Schedule II controlled substance with intent to resell and Violation of the Drug Free Youth Act. He was adjudicated delinquent of committing this drug charge and he was placed on intensive probation as a juvenile and ordered to pay court costs and fine at that time. It says Department of Children's Services placement. Then just less than a month later on June the 6th of 2004 when he was still 16 years of age, he was back before the juvenile court and found to be in violation of his probation. It says, "Disposition: Continued Department of Children's placement." And then about two months after that on August the 24th of 2004 at the age of 16, he is again determined to be in violation of probation. Again it says Department of Children's Services custody and then on May the 9th of 2005 when he was 17 years of age, he was back before the juvenile court on some traffic violations, not anything serious, seat belt law violations, registration law violation, financial responsibility law violation and no driver's license violation. You know, that's not anything serious, but it does show a continued history as a juvenile of violating the law while on probation.

Then on November the 4th of '05 when he was 17 years of age, he was found to be truant from I guess from school according to this. More serious violation being on December the 12th of 2005 at the age of 17 he is charged with the offenses of Burglary and Theft of Property. Now, this report says seven counts. I don't know if that's seven counts of Theft and one count of Burglary or perhaps seven counts of Burglary and seven counts of Theft, but, you know, at least by this report he has at least five prior felony convictions and maybe more as[a] juvenile that would qualify as felonies if committed by an adult. I do give that history as a juvenile offender considerable weight for enhancing purposes.

-6-

Of course, as I mentioned also, at least on two different occasions while on probation for these juvenile offenses, he committed new offenses as well.

Now, I would comm[ent] also according to this report, he talked about having a pretty serious drug/alcohol problem. In this report it says that [the defendant] reported his initial use of marijuana at age 14. He said usage was kind of off and on, sometimes three or four times a week. He says [the] defendant states I will get high and forget what is important in my life to me at times. He said he last reported using marijuana prior to his incarceration on this case. Again it would appear that just prior to being incarcerated back in June of last year and while on probation he was still using marijuana. It also says in the report that he tried cocaine a few times with the last use of cocaine being about two years ago. He also indicated that he began using alcohol at the age of 14. Again, all of that being for enhancing purposes the Court considers.

Now, all that I've just stated, that was prior to him turning 18 years of age. On March the 15th of 2006, he turned 18 and, of course, within just a matter of a few months, he's back before the Court as an adult this time. It looks like he was before the Henderson County General Sessions court on September the 16th, 2006 for Public Intoxication. He was convicted of that offense and ordered to obtain an alcohol and drug assessment and pay fines and court costs. Just two months thereafter on November the 16th, 2006, he is back before the Henderson County General Sessions Court on various traffic offenses: Violation of the driver's license law, seat belt law violation, registration law violation, violation of financial responsibility law. It looks like he was convicted of all those traffic offense on December the 12th of 2006. Again, this is while he was 18 years of age.

Then in 2007 he is charged on April the 18th of '07 with driving on a suspended license. It would appear that after he received that charge of driving on a suspended license, within a month later on May the 22nd of 2007, you know, a little over a month later, he is again charged with driving on a suspended license in the Henderson County General Sessions Court and also charged with resisting a stop and frisk. It looks like he was convicted of all of those charges on September 12th of 2007. According [to] this, he was placed on probation for an 11 months and 29 day sentence and also for a six month sentence beginning on September the 12th of '07.

Now, the reason that is important is because just within a few months

thereafter on January the 1st of 2008 while on probation, he is charged with Aggravated Assault. It looks like he was convicted of a reduced charge, a Simple Assault, on February the 5th of 2008. Then according to this report in Madison County on November the 13th of '08, he was charged with Driving on Suspended/Revoked License, Second Offense, and Violation of the Registration Law and Violation of the Financial Responsibility Law. It looks like he was convicted of those offenses in Madison County and he was placed on probation beginning November the 14th of '08, 11 months and 29 day suspended sentence. And then within just a few months thereafter on May the 31st of '09, he is charged with Driving on a Suspended License, prior offender. Also charged with DUI first offense. It looks like he went to court in Madison General Sessions Court on July the 21st of '09 and he was convicted of those offenses and given 11 months and 29 day sentences, both for the DUI and for the Driving on Suspended License and placed on probation there in Madison County. Of course, this happened while he was already on probation out of Henderson County General Sessions Court for this Driving on Suspended License. It looks like he had another conviction out of Henderson County General Sessions Court, Driving on Revoked License, third offense[] on September the 8th, 2010. Again, that occurring . . .while he was already on probation. For the third time he had been on probation and went out and committed new offenses.

So, you know, that's really the history I'm looking at in terms of [the defendant]. That is that every time he's ever been granted probation or at least six occasions while he's been granted probation, he's gone out and committed new offenses. Those are the enhancing factors that I will consider in this case.

As far as mitigating factors, you know, the only factor that I really see is that, you know, [the defendant] is a relatively young individual. He is I believe 24 years of age which is young, but, you know, the down side is that he's been in and out of courts at least 20 different times. From the time he was 13 years of age until the time he was 24 years of age on at least 20 different occasions he has appeared before either the General Sessions Court or the Juvenile Court or the Circuit Court on various charges. I give that fact that he is young very very slight weight. I don't see any other mitigating factors in this case.

Again, I know his testimony today was that I'm sorry for what happened and I'm remorseful for what happened, but his testimony before the jury was that he didn't do anything. "I didn't assault him. I didn't rob him.

-8-

I didn't beat him. I didn't do any of this." I don't find his testimony to be truthful here today when he says that's he's remorseful for what happened.

Now, in this case based upon these factors that I've talked about and based upon this presentence report which I've gone over in great detail, certainly I consider the defendant's physical and mental condition and his social history. One of the most important things the Court has to consider in terms of sentencing is the facts and circumstances surrounding the offense and the nature and the circumstances of the criminal conduct. This is a serious offense because we are talking about a defendant who around 3:00 in the morning broke into an individual's home while that individual was asleep. He breaks into Mr. Thurman Bailey's residence for the purpose of robbing him and for the purpose of assaulting him. He beat the victim until the victim lost consciousness. The victim had to be taken to the hospital by ambulance. The victim was held down and physically beaten. There was injuries to the victim's face and head. The victim's wallet was taken along with approximately $200 in cash. The proof was pretty clear based upon the testimony of Mr. Bailey and also based upon the testimony of Delano Jeffries that [the defendant] was in fact the person. They knew him and they positively identified him as being the person that broken into the residence and robbed Mr. Bailey and beat him severely sending him to the hospital and taking his wallet. You know, as I said earlier, there was testimony that the defendant's wife even returned the wallet a couple of days later. That's all the proof in this case that the jury considered in determining that he was guilty of these offenses.

So, you know, based upon all of this, the Court finds that the appropriate sentence is the maximum sentence for each of these offenses. For the offense of robbery, the Court is going to sentence him to the maximum sentence of six years as a Range I standard offender. For the offense of Aggravated Burglary, he'll receive the maximum sentence of six years as a Range I standard offender. For the offense of Assault, he'll receive the maximum sentence of 11 months and 29 days to the local county jail at 75 percent release eligibility status. Of course, these six year sentences he'll serve in the Tennessee Department of Corrections as a Range I offender.

. . . .

Now, based upon this defendant's extensive record of criminal activity which I've talked about and based upon his behavior since his original arrest

in this case and based upon the fact that the defendant is being sentenced for offenses that were committed while he was already on probation, for those reasons, I'm going to order that each of these six year sentences be served consecutive to each other. Now, the 11/29 for Assault will be served concurrent with Count 1, the Robbery. The Robbery and the Aggravated Burglary since those are really two separate incidences, I mean, Number 1 he had to break into the guys' [sic] house and then he goes in and robs him and beats him and assaults him. For that reason, I'm going to order these six year sentences to be served consecutive. He'll have a total effective sentence of 12 years that he'll be ordered to serve in this case.

. . . .

Now, again, based upon the previous actions and character of the defendant, the Court finds that he lacks the potential for rehabilitation. He has proven on numerous occasions that he can't follow the rules of probation. Measures less restrictive have frequently and recently been applied to this defendant without success. Also the court finds that the interest of society in being protected from this defendant's possible future conduct are great. It appears to me that he certainly would not abide by any terms of probation or any other terms of alternative sentencing. These are some very serious crimes for which he has been convicted.

Based upon this criminal history I've talked about, the Court finds that he is not an appropriate candidate for any type of probation or any type of alternative sentencing. Based upon that, he will be ordered to serve each of these sentences as stated.

The defendant subsequently filed a motion for new trial, which the trial court denied. Thereafter, the defendant filed timely notice of appeal with this court.

## Analysis

On appeal, the defendant has raised two issues for our review. First, he contends that the evidence is insufficient to support his convictions. He also contends that the trial court erred in imposing consecutive sentencing.

## I. Sufficiency of the Evidence

On appeal, the defendant contends that he "is entitled to a review of the verdict

-10-

rendered by the jury as said verdict is contrary to the evidence presented in the testimony of alibi witnesses." The entire argument contained in his brief is as follows:

> It is the imperative of the jury to weigh all evidence presented in reaching a verdict. The alibi testimony presented on behalf of the [defendant] at trial was not given sufficient weight by the jury in their determination of a guilty verdict. Without proper weight being given to all testimony, including that most favorable to the [defendant], a fair verdict cannot be rendered.

First, we note that defendant has failed to cite to the record or to any applicable law in support of this argument. We question whether the above complies with the requirements of Tennessee Rule of Appellate Procedure 27(a)(7)(A), which requires an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record[.]" Nonetheless, we will address the defendant's issue.

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379. It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). Our supreme court stated the rationale behind this mandate as follows:

> . . . The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)).

-11-

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

The defendant was convicted of aggravated burglary, robbery, and assault. As relevant here, aggravated burglary occurs when one enters a habitation with the intent to commit a felony, theft, or assault. T.C.A. § 39-14-401, -402, -403 (2010). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;
(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

T.C.A. § 39-13-101(a).

The jury in this case heard evidence from the defendant and multiple witnesses as to a possible alibi on the evening of the crime. Although, as pointed out by the State, we note there was no definite proof placing the defendant at a location other than the scene of the crime at the relevant time. *See State v. Looper*, 118 S.W.3d 386, 416 (Tenn. Crim. App. 2003). The defense witnesses merely testified that the defendant was asleep and present each time they awoke during the night. However, neither witness could specifically place the defendant there at approximately 3:00 a.m., the time around which the crime was committed.

Nevertheless, it appears that the entire premise of the defendant's sufficiency argument is based upon the fact that the evidence he presented at trial, the alleged alibi testimony, was not fairly weighed by the jury. That argument is not valid. This court has

noted countless times that it is not the province of this court to reweigh or reevaluate credibility determinations made by the finder of fact. The jury heard the evidence presented by the defendant and, based upon its verdict, chose not to believe the testimony as presented. That is a determination within the province of a jury. *See State v. Williams*, 657 S.W.2d 405, 410-11 (Tenn. 1983). As previously stated, it is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *Pappas*, 754 S.W.2d at 62. We as a reviewing court are precluded from reweighing those findings.

Based upon our review of the record, the evidence presented amply established the defendant's culpability in these crimes. Both the victim and his roommate testified that the defendant entered the home without their permission, drug the victim from his bed, and proceeded to viciously beat him. It was also testified to that the defendant took a wallet belonging to the victim which contained approximately $175-$200. The defendant's wife returned this wallet to the victim a few days later, albeit without the cash. Following the attack, the victim was taken by ambulance to a hospital where he was kept overnight. He suffered facial injuries and was unconscious for a period of time. Viewed in the light most favorable to the State, this evidence is sufficient to support the defendant's three convictions. No relief is warranted.

## II. Consecutive Sentencing

The defendant also contends that he "is entitled to have his sentences run concurrently as he had no prior adult felonies." He asserts that the court "gave insufficient weight to the mitigating factor of the [defendant's] young age and completely disregarded the fact that the [defendant] has a wife and young children who require his presence[,] as well as the [defendant's] own testimony of remorse." While acknowledging his previous criminal history, the defendant maintains that the trial court attributed too great a weight to that history in ordering the sentences be served consecutively.

The decision to impose consecutive sentences rests within the sound discretion of the trial court. *State v. Hayes*, 337 S.W.3d 235, 266 (Tenn. Crim. App. 2010); *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court recently held that the standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, No. M2011-00332-SC-R11-CD, 2013 Tenn. LEXIS 1011, *19-20 (Tenn. Dec. 20, 2013). In order to impose consecutive sentencing, the trial court must find by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). The trial court may properly impose a consecutive sentence upon the finding of just one of the criteria listed above. *State v. Alder*, 71 S.W.3d 299, 307 (Tenn. Crim. App. 2001). Consecutive sentencing is also "guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing T.C.A. §§ 40-35-102(1), -103(2)).

As noted above in our recitation of the trial court's findings, the court imposed consecutive sentencing in this case based upon the defendant's extensive record of criminal convictions and activity and based upon the fact that he was on probation at the time these offenses were committed. *See* T.C.A. § 40-35-115(b)(2),(6). Those findings are supported by the record before us. The court noted that the defendant had nine prior misdemeanor convictions and seven traffic related convictions in addition to a myriad of juvenile adjudications. The court also noted that the defendant has incurred a new conviction for felony theft over $500 while he had been released on bond in this case. These are each established by the proof presented, as well as is the fact that the defendant was on probation out of general sessions court when he committed the instant offenses. Because the record supports the trial court's conclusions and because it is clear that the court considered all the requisite principles of sentencing, we must conclude that no abuse of discretion occurred in ordering that these two sentences be served consecutively.

The petitioner's argument is again one premised on weight and credibility

determinations. It is not the function of this court to determine if the trial courts give adequate weight to negative and positive factors in sentencing determinations. The court in this case was aware of the defendant's age and that he had a wife and two young children. The court also heard the testimony from the defendant regarding his alleged remorse and clearly discounted the sentiment. The court made specific findings regarding remorse on the record. The defendant has had multiple encounters with the legal system and has been given chance after chance, yet still continues to commit crimes. There is no abuse of discretion in the trial court's determination that consecutive sentencing was warranted in this case.

## CONCLUSION

Based upon the foregoing, the judgments of conviction and resulting sentences are affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE