IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

**STATE OF TENNESSEE v. CASEY COLBERT**

**Appeal from the Criminal Court for Shelby County**
**No. 11-05332        James M. Lammey, Judge**

_____

**No. W2017-01998-CCA-R3-CD**

_____

The Defendant-Appellant, Casey Colbert, entered guilty pleas to two counts of bribery of a witness and two counts of coercion of a witness, see T.C.A. §39-16-107(a)(1) and §39-16-507 (2010). After a sentencing hearing, the trial court merged the two convictions for bribery and the two convictions for coercion into single convictions of bribery and coercion. The trial court then imposed a six-year sentence for bribery and a four-year sentence for coercion, to be served consecutively, for an effective sentence of ten years in the Tennessee Department of Correction. The sole issue presented for our review is whether the trial court erred in ordering the Defendant to serve his sentences consecutively. Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Claiborne Ferguson, Memphis, Tennessee, for the Defendant-Appellant, Casey Colbert.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ryan Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background.** In May 2009, the Defendant shot and killed twenty-two-year-old Ben Walker, the victim, during an attempted robbery. Following the Defendant's arrest for the murder, the Defendant repeatedly called and sent numerous letters to his then-girlfriend, Tiffany Benson, to whom he had confessed his involvement, in an attempt to coerce her not to testify against him. The Defendant was subsequently

convicted by a jury of first degree felony murder; attempted aggravated robbery; employing a firearm during the commission of a dangerous felony; two counts of bribing a witness; and two counts of coercing a witness. State v. Casey Colbert, No. W2012-00099-CCA-MR3-CD, 2013 WL 3128698, at *17 (Tenn. Crim. App. June 18, 2013). The trial court sentenced the Defendant to life imprisonment for the murder conviction. After a hearing, the trial court merged the two convictions for coercing a witness into a single conviction and sentenced the Defendant to six years for the attempted aggravated robbery conviction; six years for the firearm conviction; six years for each of the bribery convictions; and four years for the coercion conviction. The trial court ordered partial consecutive service for an effective sentence of life plus twenty-two years, all to be served in the Tennessee Department of Correction. Id. The Defendant appealed his convictions and sentences arguing, among other things, that the trial court erred in consolidating the offenses against the witness with the other offenses. Upon review, this court concluded the trial court erred in consolidating the bribing and coercion of witness indictments with the first degree murder and attempted aggravated robbery indictments. In regard to the Defendant's convictions of first degree murder and attempted aggravated robbery, we concluded that the trial court's error was harmless, and affirmed those convictions and sentences. However, we concluded that the error was not harmless as to the convictions of bribery and coercion of a witness and reversed and remanded. We also reversed and vacated the Defendant's conviction of employing a firearm during the commission of a dangerous felony. Id. at *1.

Upon remand, the Defendant entered guilty pleas to two counts of bribing a witness and two counts of coercing a witness on October 3, 2014. The guilty plea transcript is not included in the record on appeal.[1] Apparently, the State previously filed a motion seeking consecutive sentencing, which is also not in the record. The Defendant filed a motion, relying upon State v. Eddie L. Howard, No. 03C01-9604-CC-00167, 1999 WL 135055 (Tenn. Crim. App. March 12, 1999), arguing against consecutive sentencing because he was not a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood and that he was not a dangerous offender. In support, the Defendant asserted that his prior record was not "long enough" to qualify as a "career" criminal and that it consisted of minor offenses committed over a period of one year.

At the September 28, 2017 sentencing hearing, Beverly Walker, the victim's mother, read a letter, admitted into evidence, explaining how the Defendant's action in killing her only son had affected her life. She said the Defendant "should have been

---

[1] The record does not reveal the reason for the nearly three-year delay between entry of the Defendant's guilty plea and the sentencing hearing. We presume it may have been attributable to the withdrawal of at least two different attorneys during this time frame.

charged with two murders because [he] took [her] son['s] life, and [he] completely ruined [hers]." She recognized that the hearing was for charges related to the murder of her son and expected the court to be lenient on the Defendant because he had entered a guilty plea. She nevertheless requested the maximum sentence to be imposed in the bribery and coercion cases. The Defendant spoke at the hearing and apologized to everyone, especially his girlfriend, Ms. Benson. He said nothing could justify his actions, which were "clearly wrong." He apologized to Ms. Walker as well but denied killing her son.

At the time of his arrest, the Defendant was twenty-one years old. His presentence report, detailing his criminal history, was admitted into evidence without objection. The report showed that between the ages of eighteen and twenty-one, the Defendant was charged with various offenses including aggravated burglary, attempted aggravated burglary, vandalism, theft, criminal trespass, misdemeanor burglary, and possession of burglary tools. His last employment prior to his incarceration was "Eight Til Late Appliance And Maintenance" for his father "off and on" between the ages of sixteen and twenty-one. The report further showed employment at various fast food restaurants and a grocery store. None of the reported employment could be verified or was not attempted to be verified due to the length of time the Defendant had been employed.

The parties agreed that the Defendant was a Range I, standard offender and argued their respective positions concerning consecutive sentencing. At the conclusion of the hearing, the trial court agreed with the State, and determined that the Defendant was a professional criminal, had an extensive record of criminal activity, and was a dangerous offender under subsections (1), (2), and (4) of Tennessee Code Annotated section 40-35-115(b). The trial court merged the two bribery convictions into a single conviction of bribery and imposed a sentence of six years. It then merged the two coercion convictions into a single conviction and imposed a sentence of four years, to be served consecutively, for an effective sentence of ten years. It further ordered the ten-year sentence to be served consecutively to the previously imposed sentence of life plus six-years for the first degree felony murder and attempted aggravated robbery. The Defendant filed a timely notice of appeal, and now we review.

## ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion in ordering him to serve his sentences for bribery and coercion consecutively. The State responds, and we agree, that the trial court properly imposed consecutive sentencing as supported by the record.

As an initial matter, although the Defendant failed to include in the record on appeal the transcript of the guilty plea hearing for his present convictions as well as the

State's motion for consecutive sentencing, we conclude that the record is sufficient for our review of the issue presented. See State v. Caudle, 388 S.W.3d 273, 277 (Tenn. 2012). Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2006). The Tennessee Supreme Court has held, "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in code section 40-35-115(b). Those categories include:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

- 4 -

An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2); see Imfeld, 70 S.W.3d at 708. An appellate court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." Pollard, 432 S.W.3d at 861. To adequately provide reasons on the record to support the imposition of consecutive sentences based on the dangerous offender classification, trial courts must also conclude that the evidence has established that the aggregate sentence is (1) reasonably related to the severity of the offenses; and (2) necessary to protect the public from further criminal acts. Id. at 863 (citing State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)).

Here, the record shows that the trial court imposed consecutive sentencing after determining that the Defendant was a professional criminal, that the Defendant had an extensive record of criminal activity for someone his age, and that the Defendant was a dangerous offender. T.C.A. §§ 40-35-115(b)(1), (2), and (4). The relevant portions of its oral ruling are as follows:

> So, there's two things. You could find that he's a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. . . . I mean, you could also say – I mean, he was twenty-one when he committed this murder – robbery – he was only eighteen three years before and had already built up a substantial record. And it reads, "He's an offender whose record of criminal activity is extensive." You know, I guess if you're thirty-nine and you've been arrested every month, you could say, well, yeah; but to be twenty-one and you've been arrested as many times as he was and also get convicted of a felony and then a murder and an attempted robbery, . . . my goodness, he's already had a pattern. A witness testified he wasn't working at the time of the event. So, he wasn't working; he's out there robbing; and the particular thing has nothing to do with this particular crime; it has to do with other crimes. This particular crime was used to cover up some stuff, but it doesn't take away the fact that his record of criminal activity is extensive.
>
> . . . .
>
> I mean, so for the facts of this case because you could base it on – it says, "The defendant is a dangerous offender." Well, anyone who commits a murder or robbery, I would say, is a dangerous offender. And he also has

another felony – another several arrests. He's been on probation for vandalism. That person is dangerous. ". . . whose behavior indicates little or no regard for human life, no hesitation about committing crime in which the risk to human life is high."

. . . .

"The defendant is a dangerous offender whose behavior" – okay – "indicates little or no regard for human life." That's clear. "And no hesitation about committing a crime in which the risk to human life is high." So, I don't know if they're talking about this crime or the crime of murder, and these two factors have to apply – "The circumstances surrounding the commission of the offense are aggravated and the aggregate length of the sentences reasonably relate to the offense for which the defendant stands convicted."

Well, what if he had been successful in bribing and coercing this witness into changing their story?

. . . .

[Looking] at it from Ms. Benson's standpoint, the fear involved in knowing what could happen – knowing what someone is capable of – the fear that that would instill[.]

. . . .

Well, I mean, you can base this dangerous offender on the facts of the present case. The facts of the present case are so intertwined with the murder. I mean, he was in jail on a murder, and he was trying to get someone – I forgot the particulars now it's been so long; but they found him guilty of both bribery – bribery and coercion. I mean, these are such extraordinary circumstances, you know, that – the last part says, "Reasonably relates to the offense for which the defendant stands convicted."

[I]f you think about justice – if there's any justice, whatsoever – if you think about it from the standpoint of Ms. Benson who was apparently threatened and bribed – or coerced – what went through her mind; then you have this poor kid that was murdered for almost nothing – to run them concurrent would almost be an insult to one another. I suppose if the

victim of the underlying charge to which he was trying to get out of trouble on and the conviction for the bribery were the same person, but here we have totally separate people; and I really believe that running these all consecutive would be reasonably related to the offense for which the defendant stands convicted. There's no other way around it. It's extremely troubling. These are extraordinary things. I mean, it's not every day you have someone in jail on a murder case who tries to coerce[.]

. . . .

So, I think he is - - I think at the time of this offense, he was a professional criminal. And his record of criminal activity is extensive for someone his age. He was twenty-one and had all these arrests, and it's absolutely sad. . . .    So, I'm going to order the six and the four to be consecutive and consecutive to the murder case – a total of ten years consecutive.

Although the Defendant argues that the trial court improperly imposed consecutive sentencing based on his status as a professional criminal that had knowingly devoted his life to criminal acts as a major source of his livelihood, we conclude that the record adequately supports consecutive sentencing based on the Defendant's classification as a dangerous offender and his extensive criminal history. Here, the Defendant argues that the "the record is deficient of adequate consideration of the Wilkerson factors[.]" The Defendant specifically contends that the trial court placed undue emphasis on the Defendant's convictions of first degree murder and attempted aggravated robbery "almost to the exclusion of the bribery and coercion" convictions actually before the court. Upon our review, we agree with the determination of the trial court, and conclude that the Defendant's prior convictions were the underlying cause for the Defendant's attempt to bribe and coerce the witness in the instant case, thereby making the cases "intertwined." Accordingly, the record sufficiently supports consecutive sentencing based on the Defendant's classification as a dangerous offender.

In considering the Defendant's classification as a dangerous offender the trial court determined that consecutive sentencing reasonably related to the severity of the Defendant's offenses and served to protect the public from further criminal conduct by the Defendant. Wilkerson, 905 S.W.2d at 938. Although the trial court did not recount all of the facts from the trial, it presided over the trial and recalled the overall tenor of Benson's testimony. The proof at trial established that on the night of the murder, the Defendant came by Benson's home after calling and telling her he wanted to speak to her. Casey Colbert, 2013 WL 3128698, at *11. Eventually, the Defendant confessed the crimes to Benson and recalled details from the event. Id. Thereafter, Benson spoke with

police regarding the incident and identified the Defendant from a photographic array.  Id. at *12.  After the Defendant was arrested, Benson testified at his preliminary hearing on June 17, 2009.  Id.  Following the preliminary hearing, the Defendant called Benson and asked why she testified against him.  Id.  According to Benson, the Defendant called her numerous times before trial.  Id.  The State played a previously admitted recording of a phone call placed by the Defendant from jail on June 17, 2009.  Id.  Benson identified the voices on the call as hers and the Defendant's.  Id.

Benson testified that the Defendant's calls persisted.  Id.  She asked him to stop calling, but he refused and proceeded to call her cell phone, her work phone, her sister's phone, her mother's phone, and "three-way."  She changed her phone number four or five times.  Id.  On March 26, 2011, Benson received two "three-way" phone calls from the Defendant.  The calls were placed through a man named Walter, whom the Defendant claimed was his uncle.  Id.  Benson said she last spoke with the Defendant by phone in March 2011 and she recalled that phone conversation because the Defendant told her "not to show up for trial," and "[t]o hide and not to sign a subpoena and not to open a door for the police when they come."  Id.  The State played these phone calls, along with several others for the jury.  Id. at *12-13.  On each call, Benson identified the Defendant's voice.  Id.  Benson said at the time she received the calls, she was living alone and became scared because the Defendant told her that he would "have somebody to come and get [her] and hide [her]."  As a result, Benson moved in May 2011.  Id. at *12.  Benson testified that the Defendant would offer her money and to take care of her if she did not go to court.  He had also threatened to take custody of their daughter.  Id. at *13.

Benson testified that the Defendant had written her over one hundred letters, even though she had asked him to stop.  Id.  at *12.  She identified several of the letters and recalled their substance.  Id. at *13.  In one letter, the Defendant suggested that she say she had been coerced by the police.  Id.  In another, the Defendant explained that his uncle was sick and dying and that upon his death, the Defendant was going to receive $20,000, and that he would give Benson $10,000 if he got out of jail.  Id.  He then told her to refuse to testify.  Id.  In other letters, Benson recalled the Defendant asking her to write what he told her to write in her handwriting, to not show up to court, and to dodge the subpoena.  Id.  He gave her the name and number of the "investigator" and told her to call the investigator and change her statement.  Id.  Each of the letters was admitted into evidence.  Id.

Given this testimony, the record fully supports the trial court's finding that the Defendant was a dangerous offender whose actions warranted consecutive sentencing in order to protect the public from further criminal activity of the Defendant.  Additionally, the imposed consecutive sentencing reasonably related to the severity of the Defendant's

convictions for bribery and coercion. The trial court did not err in imposing consecutive sentencing on this basis.

We additionally conclude that the trial court properly imposed consecutive sentencing based upon the Defendant's extensive criminal history. This factor alone supports consecutive sentencing. It also "has been interpreted to include not only the convictions presently before the sentencing court but also prior offenses." State v. Palmer, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). As noted above, the Defendant had an extensive juvenile and adult criminal history. His adult criminal history began in 2008, and consisted of multiple thefts, vandalism, aggravated criminal trespass, and attempted aggravated burglary. The Defendant was arrested sometime in 2009, and in 2011, the Defendant was convicted of two additional felony offenses of first degree murder and attempted aggravated robbery. In the present case, the Defendant was also convicted of felony bribing and coercion of a witness. In total, the Defendant was before the trial court with a criminal history consisting of five felonies and numerous misdemeanor convictions. Accordingly, consecutive sentencing was also properly imposed based on the Defendant's extensive criminal history. See, e.g., State v. Garrick Graham, No. E2014-01267-CCA-R3-CD, 2016 WL 892013, at *21 (Tenn. Crim. App. Mar. 8, 2016).

## CONCLUSION

Because any one of the above grounds supports the trial court's imposition of consecutive sentencing, we find no abuse of discretion. See State v. Adler, 71 S.W.3d 299, 307 (Tenn. Crim. App. 2001) (stating that the sentencing statute requires that only one factor be proven to support consecutive sentences). The Defendant is not entitled to relief, and the judgments of the trial court are affirmed. However, in our review of the bribery judgments in this case, we detect certain clerical errors necessitating a remand for entry of corrected judgments. The section listing the indicted and conviction offense erroneously shows Tenn. Code Ann. section "39-16-607," and does not correspond to the offense of bribery. Accordingly, we remand for entry of corrected judgments in this case.

_____
CAMILLE R. MCMULLEN, JUDGE

- 9 -